# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-01162-SCT

*RICKEY O'NEAL HOLLOWAY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/01/1999 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN A. FERRELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/28/2000 |
| MOTION FOR REHEARING FILED: | 10/30/2000; denied 2/1/2001 |
| MANDATE ISSUED: | 2/8/2001 |

## BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.

## SMITH, JUSTICE, FOR THE COURT:

¶1. Rickey O'Neal Holloway was convicted in the Circuit Court of Prentiss County, Mississippi, on one count of fondling and one count of sexual battery of a child under 14 years of age. He was sentenced to concurrent terms of imprisonment of five years and fifteen years, with five years suspended, respectively. Aggrieved, Holloway appeals to this Court raising four issues all of which we find to be without merit. We, therefore, affirm the trial court.

## STATEMENT OF FACTS

¶2. On January 11, 1998, John and Jane Doe[1] took their three children, Mary, Sally, and Joe, to dinner at the home of their long-time friends Rickey and Diane Holloway. After dinner, John and Jane Doe returned home with their children because John Doe was not feeling well. Rickey and Diane Holloway offered to take care of the children in the event John Doe should need to go to the emergency room. John Doe became increasingly ill, and John and Jane Doe took the three children back to the Holloways' house on their way to the hospital.

¶3. The three children watched television in the Holloways' living room and fell asleep there - Joe in the

recliner, and Sally and Mary together on the couch with their heads at opposite ends. Rickey and Diane Holloway slept on the floor of the living room at the end of the couch. John and Jane Doe returned for the children after leaving the emergency room, but Rickey Holloway recommended that because the children were already asleep, they be allowed to spend the night. Leaving the three children with the Holloways, John and Jane Doe returned home. Rickey Holloway again fell asleep on the floor with Diane Holloway.

¶4. Mary, who was 12 years-old at the time of this incident, testified that about five o'clock in the morning, she was awakened by Rickey Holloway (hereinafter "Holloway") touching her breasts. She stated that when she awoke, her pants and panties were pulled down around her knees. She testified that she told Holloway to stop, but that he refused and moved his hand to her vagina. Mary testified that Holloway inserted one of his fingers into her vagina. She stated that he moved his finger in and out of her vagina and that he then inserted two fingers in her vagina. Mary testified that she attempted to wake Sally, who was also asleep on the couch, by pinching her, but that Sally did not wake up. Mary testified that she was afraid to scream for help and that no one else in the room awoke during the incident. Mary stated that she told Holloway she needed to go to the bathroom and that she remained there for about ten minutes. She testified that when she returned to the living room, Holloway said that he was sorry and that he did not know what he had done to her because he had been on a lot of medication. Mary testified that Holloway asked whether she was going to tell her parents about the incident. Mary testified, "I told him yes. If he wasn't, I was." Holloway testified that he had a drinking problem and had been drinking over the weekend. Holloway also testified that he had taken pain medication for a headache during the night of the alleged incident.

¶5. Holloway took the children home about six o'clock in the morning. Mary testified that when they arrived at the Does' residence, Holloway asked again whether she was going to tell her parents about the incident. Mary answered "yes" and went into the house and directly to her bedroom. Holloway entered the house as well. Jane Doe testified about the next moments as follows:

> Well, the children came through the door first and then Rickey came in. And he was just all nervous and upset. And he said, I've done something terrible. And we were just shocked. He said - [John] asked him what did he do. He said, I'm sorry, you're going to hate my guts. And then he proceeded to go over by the heater. And he got in front of the heater and he got down on his hands and knees crying and begging and holding his head and saying, please, forgive me. I've touched that baby in places that I shouldn't have. And [John] asked who, and he said [Mary].

Jane's account was corroborated by John's testimony.

¶6. Jane Doe took Mary to the Prentiss County Sheriff's Department to report the incident to authorities. From there, she took Mary to the emergency room at Booneville, but because Mary would not allow a male doctor to examine her, Jane Doe took Mary to see Dr. Linda Chidester at Dr. Chidester's clinic. Dr. Chidester interviewed and examined Mary. The account of the incident given to Dr. Chidester by Mary corroborates that given by Mary in court, save Mary's description of the color of the shorts Holloway was wearing at the time of the incident.[2]

¶7. Dr. Chidester was accepted by the trial court as an expert in the field of family practice and in matters having to do with the sexual abuse of children. Dr. Chidester testified that Mary had two vaginal abrasions - one small and one large. Dr. Chidester stated that these finds were consistent with Mary's account of what occurred. On cross-examination, Dr. Chidester stated that there are other types of trauma, unrelated to

sexual abuse, that could have resulted in the same physical findings, but that such would be inconsistent with the history given to her by Mary. She testified that the scrapes obviously occurred within the past twenty-four hours.

¶8. After returning home from the Does' residence on the morning of January 12, 1998, Holloway left his house again because he and Diane had an argument about his drinking. Later that day, Holloway went to the Magnolia Regional Health Center in Corinth, Mississippi, to get treatment for his alcohol problem. The Health Center refused to admit Holloway while he was drinking, so he returned on January 13, 1998, and was admitted at that time.

¶9. On the morning of January 14, 1998, Holloway was arrested at the Health Center and transported to the Prentiss County Justice Center. Having waived his rights, Holloway gave a statement, which was recorded on audio tape, to Officers Clayton Eugene Gilley and Lewis Tynes. Holloway stated to Officer Gilley that he had been drinking all weekend prior to the Does' visit on Sunday evening. He stated that after the Does returned home from the emergency room, he took some pain medication. He stated that he remembered getting up during the night and sitting on the couch between Sally and Mary. He stated that when he got up in the morning he felt as though he "had touched her with [his] hands," so he asked Mary whether he had touched her. He stated that Mary replied that he had and that he then apologized to Mary. Holloway stated to Officer Gilley that he told John and Jane:

> I've done something that I shouldn't and I said "[John]," I said "apologies is not enough." I said, "If I did y'all go and have papers took out on me that way I can get some help or they'll help me, or something." And I had [John's] guitar and stuff was still at the house and I said, "I will bring your guitar back to you." I said, "[John], I'm sorry." I said, "but it shouldn't have happened." Like I said, I had done took so much beer and so much medicine and if I did touch her I didn't mean to, but if I did I don't realize it.

¶10. At trial, Holloway testified that he was under the influence of medication at the time he made the statement and that he did not remember his statements. Holloway testified that he was administered three 100 mg doses of librium at the Magnolia Regional Health Center, the last being the morning of his arrest.

¶11. At trial, Holloway denied having fondled or penetrated Mary. He stated that though he awoke twice during the night, he never sat down on the couch. He testified that when he was getting dressed the next morning, Mary entered the bedroom and told him he touched her during the night. He testified that he denied touching Mary but told her that, if she thought he had touched her, she needed to talk to her mother. Holloway testified that he told Jane and John that Mary had said he had touched her and that he told Mary that he had not touched her.

¶12. On April 14, 1998, an indictment was returned against Holloway by the Grand Jury of Prentiss County, Mississippi, charging Holloway in Count One with fondling and in Count Two with sexual battery of a child under the age of fourteen years. Holloway's motion to suppress his statement to authorities was denied by Circuit Court Judge Thomas J. Gardner III subsequent to a pre-trial hearing. A trial was held on June 28 and 29, 1999, and the jury returned verdicts of guilty on both charges. On July 1, 1999, Holloway was sentenced on the fondling charge to serve a term of five years, to run concurrently with the sentence on the charge of sexual battery, which was fifteen years with five years suspended. On July 2, 1999, Holloway timely filed a motion for judgment of acquittal notwithstanding the verdict, or in the alternative, for a new trial. The trial court denied the motion on July 2, 1999. Holloway timely filed his notice of appeal on July 8,

1999. Aggrieved by the judgment of the trial court, Holloway raises the following issues:

**I. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE STATEMENT GIVEN BY HOLLOWAY.**

**II. THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**III. THE TRIAL COURT ERRED IN REFUSING INSTRUCTION D-14.**

**IV. THE TRIAL COURT ERRED IN ALLOWING THE AUDIO TAPE RECORDING OF HOLLOWAY'S STATEMENT AND TRANSCRIPT TO BE TAKEN INTO THE JURY ROOM DURING DELIBERATIONS.**

## DISCUSSION

**I. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE STATEMENT GIVEN BY HOLLOWAY.**

¶13. The standard of reviewing the admission of a confession is well-settled. "Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applies an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." *Wright v. State*, 730 So. 2d 1106, 1108 (Miss. 1998) (quoting *Lee v. State*, 631 So. 2d 824, 826 (Miss. 1994)). The voluntariness of a waiver, or of a confession, is a factual inquiry that must be determined by the trial judge from the totality of the circumstances. *O'Halloran v. State*, 731 So. 2d 565, 570 (Miss. 1999); *Gavin v. State*, 473 So. 2d 952, 954 (Miss. 1985); *Stevens v. State*, 458 So. 2d 726, 729 (Miss. 1984). "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Herring v. State*, 691 So. 2d 948, 956 (Miss. 1997). Once a determination of voluntariness is made by the trial court, the defendant bears a heavy burden in attempting to reverse the trial court's finding that the confession is admissible. *Blue v. State*, 674 So. 2d 1184, 1204 (Miss. 1996).

¶14. Holloway was arrested on the morning of January 14, 1998, at the Magnolia Regional Health Center. He was then transported to the Prentiss County Justice Center where he waived his rights and made a statement to Officers Gilley and Tynes. Holloway asserted in his motion to suppress that at the time of his statement, he was under the influence of "strong medication" administered to him while he was undergoing treatment at the Health Center. Subsequent to a hearing outside the presence of the jury, the trial judge denied Holloway's motion to suppress his statement. Holloway here contends that the State failed to demonstrate that the statement was voluntarily given and that because his statement was given while he was under the influence of drugs, its admission is reversible error.

¶15. The procedural rule of *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966), requires that the trial court hold an evidentiary hearing upon the accused's objection to the introduction of the confession. The State has the burden of proving the voluntariness of a confession. *Id.* "This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness." *Id.* (citing *Lee v. State*, 236 Miss. 716, 112 So. 2d 254 (1959)).

¶16. At the suppression hearing, the State offered the testimony of Officer Gilley of the Prentiss County Sheriff's Department, who arrested Holloway and ultimately recorded Holloway's statement. The State clearly made out its prima facie case by offering the testimony of Gilley. Gilley testified that upon arriving at the facility, he spoke to a nurse about having Holloway released into police custody. Gilley testified that the woman spoke with a doctor. Gilley stated that he asked the woman whether Holloway was on any kind of medication that would render him unable to give a statement or to be questioned, and that she replied that he was not on any such medication. Gilley testified that upon his arrest, Holloway was transported to the Prentiss County Justice Center. Upon arriving at the Justice Center, Gilley read Holloway his rights, and Holloway signed the waiver of rights at 10:47 a.m. Having waived his rights, Holloway gave a statement, which was recorded on audio tape, to Gilley and Tynes. The tape recording began at 11:22 a.m.

¶17. Gilley testified that he had known Holloway since 1984 and that at the time Holloway made the statement, Holloway did not appear to be in any way different from Gilley's previous experience with him. Gilley stated that Holloway did not appear to be under the influence of any medication or alcohol. Gilley stated that Holloway did not appear to be inhibited, nor did his speech patterns, eye dilation, or physical movements appear to be influenced by drugs or alcohol. Gilley testified that Holloway knowingly, freely and voluntarily waived his rights and gave the statement.

¶18. Upon the State's presentation of a prima facie case of admissibility, the burden shifted to Holloway to provide evidence to rebut the State's assertion. *Cox v. State*, 586 So. 2d 761, 763 (Miss. 1991) (citing *Agee*, 185 So. 2d at 673). Holloway presented no evidence, testimony or otherwise, at the suppression hearing that his statement was involuntarily made. He offered neither his own testimony nor evidence from persons or documents at the Magnolia Regional Health Center that he had taken the medication, librium, he alleges to have taken in his brief. At trial, he testified to having taken librium and to its effects on him, and he offered the testimony of his wife that at the time she picked Holloway up at the sheriff's department he was "hardly aware of anything." Holloway offered no such evidence at the suppression hearing.

¶19. Holloway asserts that his statement contains "numerous errors of simple fact" which indicate that he was confused and under the influence of drugs. Though Holloway does not state in his brief to this Court what those errors are, it will here be assumed that he refers to those errors which were emphasized by defense counsel at the hearing. Specifically, on cross-examination of Officer Gilley, defense counsel questioned Gilley regarding Holloway's mistakenly referring to Mary as Jane. Also, defense counsel questioned Gilley regarding Holloway's apparent confusion over which day of the week it was and regarding Holloway's difficulty in pronouncing the word "hallucinating." Defense counsel also questioned Gilley about the lapse of time between the time that Holloway waived his rights and the time the recording began.

¶20. This Court has held that the mental condition of a defendant does not in and of itself render a confession inadmissible, but instead "[is] but one factor to consider among the totality of the circumstances of a confession and interrogation." *Kircher v. State*, 753 So. 2d 1017, 1026 (Miss. 1999) (quoting *Blue v. State*, 674 So. 2d 1205). *See also Neal v. State*, 451 So. 2d 743 (Miss. 1984). This Court has stated that "intoxication or sickness does not automatically render a confession involuntarily. The admissibility of the confession depends on the degree of intoxication." *Kircher*, 753 So. 2d at 1026 (quoting *Johnson v. State*, 511 So. 2d 1360, 1365 (Miss. 1987)). It cannot be said that the trial court erred in determining that Holloway's mistakenly referring to Mary as Jane, apparent confusion over which day of the week it was,

and his difficulty pronouncing the word "hallucinating" were insufficient to demonstrate that Holloway was rendered unable to make a voluntary statement to police by his alleged drug consumption. The trial judge had before him the testimony of Officer Gilley that Holloway was not inhibited by drugs at the time of his confession and that Holloway waived his rights knowingly and voluntarily. Also before the trial judge was the absence of any evidence that librium had been actually administered to Holloway at the Health Center and scant evidence that Holloway may have been impaired in some way at the time the statement was taken. Though defense counsel emphasizes the lapse of time, thirty-five minutes, between the time Holloway waived his rights and the time the statement was recorded, Gilley denied on cross-examination that anything "improper" had transpired during that time period, and Holloway put on no evidence that anything "improper" transpired during those thirty-five minutes. The trial judge applied the correct legal standard, considered the totality of the circumstances, and held that Holloway's statement was free and voluntary, and thus admissible. Holloway had a heavy burden to overcome, and he failed in that attempt. *Blue v. State*, 674 So. 2d at 1184.

### II. THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶21. Holloway contends that the verdict of the jury was against the overwhelming weight of the evidence, and that, therefore, the trial court should have granted his motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. A motion for judgment notwithstanding the verdict implicates the sufficiency of the evidence. *Sheffield v. State*, 749 So. 2d 123, 125 (Miss. 1999). The standard of review for the legal sufficiency of the evidence is well-settled:

> [W]e must, with respect to each element of the offense, consider all of the evidence -- not just the evidence which supports the case for the prosecution -- in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Id.* (quoting *Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss.1998)).

¶22. A motion for a new trial, however, falls within a lower standard of review than does that for a judgment notwithstanding the verdict. *Id.* at 127. A motion for a new trial simply challenges the weight of the evidence. *Id.* This Court has explained that it will reverse the trial court's denial of a motion for a new trial only if, by doing so, the court abused its discretion. *Id.* (quoting *Gleeton v. State*, 716 So. 2d at 1088). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* (quoting *Groseclose v. State*, 440 So. 2d 297, 300 (Miss.1983)). This Court has also explained that factual disputes are properly resolved by a jury and do not mandate a new trial. *McNeal v. State*, 617 So.2d 999, 1009 (Miss.1993).

¶23. The account of the alleged incident given by Mary to Dr. Chidester within hours of the alleged assault was consistent with that given by her at trial. Mary's account was supported by Dr. Chidester's physical findings. Jane Doe's account of Holloway's conduct shortly after the incident was corroborated by that of

John Doe as well as by Holloway's post-arrest statement. The only evidence contradicting Mary's testimony was that of Holloway, who testified that a few days after making the statement to police, he realized that what Mary said occurred did not occur.

¶24. In his argument to this Court, Holloway makes much of minor inconsistencies in the witnesses testimonies, such as the fact that Mary told Dr. Chidester that Holloway wore gray shorts yet testified at trial that Holloway wore brown shorts with an orange stripe. It warrants mention, however, that Holloway's own testimony at trial was substantially inconsistent with that given by him to the authorities. This Court has repeatedly stated that matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. *Richmond v. State*, 751 So. 2d 1038, 1049 (Miss. 1999) (citing *Fisher v. State*, 481 So. 2d 203, 212 (Miss.1985)); *Morgan v. State*, 741 So. 2d 246, 256 (Miss. 1999); *Neal v. State*, 451 So. 2d at 758. Considering the evidence in the light most favorable to the guilty verdict and accepting as true all credible evidence consistent with guilt, it cannot be said that the evidence is such that reasonable and fair-minded jurors could only find Holloway not guilty. Thus, the trial court's denial of Holloway's motion for judgment notwithstanding the verdict was proper. Furthermore, the verdict is not so contrary to the overwhelming weight of the evidence that to allow it would sanction an unconscionable injustice. It cannot be said that the trial judge abused his discretion in denying Holloway's request for a new trial.

### III. THE TRIAL COURT ERRED IN REFUSING INSTRUCTION D-14.

¶25. "Where the jury is adequately instructed on reasonable doubt, it is not reversible error for the trial court to refuse to give a defense instruction on reasonable doubt." *Reynolds v. State*, 585 So. 2d 753, 755-56 (Miss. 1991) (citing *Giles v. State*, 501 So. 2d 406, 409 (Miss. 1987); *Simpson v. State*, 497 So. 2d 424 (Miss. 1986)). Holloway asserts that the trial court erred in refusing his proposed instruction D-14, which instructed the jury as to the "reasonable doubt standard":

> You are bound, in deliberating upon this case, to give the Defendant the benefit of any reasonable doubt of the Defendant's guilt that arises out of the evidence or want of evidence in this case. There is always a reasonable doubt of the Defendant's guilt when the evidence simply makes it probable that the Defendant is guilty. Mere probability of guilt will never warrant you to convict the Defendant. It is only when on the whole evidence you are able to say on your oaths, beyond a reasonable doubt, that the Defendant is guilty that the law will permit you to find him guilty. You might be able to say that you believe him to be guilty, and yet, if you are not able to say on your oaths, beyond a reasonable doubt, that he is guilty, it is your sworn duty to find the Defendant not guilty.

Holloway asserts that an instruction in the manner in which the jury should apply the "beyond a reasonable doubt standard" was not contained in any other instructions given by the trial court and that, had this been the case, the failure to grant instruction D-14 would not have been error. The State submits that, in viewing the instructions as a whole, the jury was adequately instructed regarding the "reasonable doubt standard." Holloway contends to the contrary.

¶26. In *Reynolds v. State*, 585 So. 2d 753 (Miss. 1991), Reynolds argued that the trial court committed error in refusing his proposed instruction D-2, which stated:

> The Court instructs the Jury that you are bound, in deliberating upon this case, to give the Defendant the benefit of every reasonable doubt of his guilt that arises out of the evidence or want of evidence in this case. Mere probability of guilt, however strong, will never warrant you in convicting the

Defendant. It is only when on the whole evidence you are able to say on your oaths, beyond every reasonable doubt, that he is guilty, and that there is no other way to account for the evidence in the case than that he is guilty, that the law will permit you to find him guilty. You might be able to say you believe him to be guilty, and yet, if you are not able to say on your oaths, beyond every reasonable doubt, that he is guilty, it is your sworn duty by your verdict to say, "Not Guilty."

*Id.* at 756. This Court held that the trial court properly refused the instruction because it had already granted an instruction that informed the jury, either specifically or generally, of the "beyond a reasonable doubt" standard. *Id. See also Ragin v. State*, 724 So. 2d 901, 906 (Miss. 1998).

¶27. In *Whittington v. State*, 748 So. 2d 716 (Miss. 1999), Whittington argued that it was error for the trial court to refuse his proposed instruction D-6, which tracked verbatim the instruction requested by Holloway in this case. This Court stated that the trial court is not required to instruct on the same issue in different language. *Id.* at 721 (citing *Cunningham v. State*, 467 So. 2d 902, 906 (Miss. 1985); *Jones v. State*, 381 So. 2d 983 (Miss. 1980)). The Court noted that Whittington had several jury instructions granted that focused on reasonable doubt, such as instruction D-1 which stated that the State must "prove by competent and relevant evidence and beyond a reasonable doubt that the Defendant is guilty;" instruction D-4, which stated that the jury must be convinced by the evidence alone that Whittington is guilty beyond a reasonable doubt; instruction D-5, which stated that if reasonable doubt arises, the jury must acquit Whittington; and instruction D-8, which stated that if the evidence or lack thereof raises a reasonable doubt as to Whittington's guilty, the jury must acquit Whittington of the murder. *Whittington*, 748 So. 2d at 721. The jury also received an instruction which stated:

The Court instructs the jury that the law presumes every person charged with the commission of a crime to be innocent. The presumption places upon the State the burden of proving the Defendant guilty of each and every material element of the crime with which he is charged. The presumption of innocence attends the Defendant throughout the trial and prevails at its close, unless overcome by relevant and competent evidence which satisfies the jury of the Defendant's guilty beyond a reasonable doubt. The Defendant is not required to prove anything.

*Id.* The Court stated that this instruction speaks to every element of the crime as well as the required proof to be beyond a reasonable doubt. The Court held that the instruction requested by Whittington and denied by the trial court was cumulative and correctly refused. *Id.*

¶28. Here, the trial court granted instruction C-4 which provided as follows:

The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the defendant guilty beyond a reasonable doubt. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence. The burden of proving beyond a reasonable doubt every material element of the crime about which the defendant is charged is upon the State of Mississippi. If the State has failed to prove any material element of the crime charged beyond a reasonable doubt, you are to find the defendant not guilty.

Like the instruction discussed in *Whittington*, this instruction speaks to every element of the crime as well as the required proof to be beyond a reasonable doubt. Additionally, several additional jury instructions

were granted which focused on reasonable doubt. Instructions C-2 and C-3 were given which also set out the standard: "If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant Rickey O'Neal Holloway not guilty...." Instruction C-4 stated that if the jury found from the evidence beyond a reasonable doubt that Holloway "was capable of distinguishing between right and wrong at the time of the alleged offense and that he voluntarily deprived himself of the ability to distinguish between right and wrong by becoming intoxicated . . . then he is criminally responsible for the act."

¶29. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Ragin*, 724 So. 2d at 907 (quoting *Collins v. State*, 691 So. 2d 918, 922 (Miss. 1997). Having reviewed the instructions presented to the jury in this case, this Court finds that the trial court did not err in refusing instruction D-14.

## IV. THE TRIAL COURT ERRED IN ALLOWING THE AUDIO TAPE RECORDING OF HOLLOWAY'S STATEMENT AND TRANSCRIPT TO BE TAKEN INTO THE JURY ROOM DURING DELIBERATIONS.

¶30. During the testimony of Officer Gilley, the audio tape recording of Holloway's statement was played for the jury. The jury was also provided copies of a transcript of the statement to allow them to follow along as the recorded statement was played. Both the tape and transcript were admitted as exhibits. When the jury retired to deliberate, the court instructed the bailiff to take all of the instructions and exhibits to the jury room. Outside the presence of the jury, defense counsel objected to the tape and transcript going back as an exhibit to the jury. The trial judge stated that he would allow the transcript, but not the tape to be used during deliberations. The prosecutor stated that it was appropriate for the tape to go back as it had been admitted as an exhibit. The trial judge then changed his ruling to allow both the transcript and tape to go to the jury. Defense counsel repeated his objection, arguing that by allowing the transcript and tape to go back to the jury, the court was improperly bolstering the evidence. Again, the court overruled the objection, and the tape and transcript were taken to the jury room. The trial judge instructed the jury that the transcript had been admitted for "the limited and secondary purpose of aiding [the jury] in following the one content of the conversation . . . and also to aid [the jury] in identifying the speakers." The court also stated that whether the transcript correctly or incorrectly reflected the content of the conversation or the identity of the speakers was entirely for the jury to determine and that if the jury should determine that the transcript was in any respect incorrect or unreliable, it should be disregarded to that extent.

¶31. Holloway contends that the trial court erred in allowing the audio tape and transcript of Holloway's statement to go to the jury during deliberations. For this assignment of error, Holloway relies upon *Scott v. State*, 446 So. 2d 580 (Miss. 1984), and *Cobb v. State*, 734 So. 2d 182 (Miss.Ct. App. 1999). In *Scott*, the State put on a police officer to rebut the testimony of another witness. During the officer's testimony, he began reading from a written statement, which were allegedly notes that he had made as he talked with the witness. This Court held that it was error for the trial court to admit the officer's notes into evidence because no predicate was laid to show that the officer had a faulty memory of the events which would enable him to use the notes to refresh his memory or to testify from the notes. 446 So. 2d at 585. The Court also stated that allowing the jury to have the officer's notes while it deliberated amounted to an improper bolstering of his testimony. *Id.*

¶32. In *Cobb*, the Court of Appeals held that it was error to introduce a police officer's written version of Cobb's statement into evidence as an exhibit since the statement was never adopted by Cobb. *Cobb*, 734 So. 2d at 185. The court explained that the proper method of introducing Cobb's oral confession, in the absence of an actual recording in some form, would have been for the officer to relate from the stand those things that Cobb told him during the interrogation. *Id.* The court went on to state that to permit the jury, in addition to hearing the officer's testimony from the stand, to have a written version of the statement in the jury room during its deliberations improperly permitted too much emphasis to be placed on the evidence. *Id.* at 185.

¶33. The State contends that neither *Scott* nor *Cobb* are authoritative in the case at hand as both cases found that the exhibits in question were inadmissible in the first place, and that the error was compounded in allowing the jury access to the exhibits during deliberation. The State points to Rule 3.10 of the Uniform Circuit and County Court Rules which provides, in pertinent part, "[t]he court **shall** permit the jury, upon retiring for deliberation, to take to the jury room the instructions and exhibits and writings which have been received in evidence, **except depositions**." (emphasis added).

¶34. Holloway argues that the tape recording and transcript were purely testimonial in nature and that they should not be given emphasis over all other testimony by allowing the jury to utilize them during deliberations. Holloway briefly argues that the videotaped statement is the functional equivalent of a deposition, which Rule 3.10 specifically prohibits in the jury room. Holloway cites no support for this proposition.

¶35. This Court addressed an identical argument in *Walker v. State*, 671 So. 2d 581 (Miss. 1995), in which Walker argued that the trial court erred in allowing the videotape of the statement of another witness along with its typewritten transcript into the jury room. The Court rejected Walker's claim, and Holloway's argument, likewise, should be rejected here. In rejecting Walker's argument, the Court relied on *Pettit v. State*, 569 So. 2d 678 (Miss. 1990) and *Coulter v. State*, 506 So. 2d 282 (Miss. 1987). The Court stated, "Applying the reasoning of the Court in *Pettit*, this Court has made clear that evidence such as the videotape here at issue should be given to the jury unless, within the court's discretion, the trial judge has a valid reason to exclude it from the jury room." *Walker*, 671 So. 2d at 604. Within the discretion of the trial court is the license to withhold exhibits that may be "dangerous or prone to destruction," and the trial court retains broad discretion to "regulate the presentation of the tape to the jury, such as limiting the number of replays." *Pettit*, 569 So. 2d at 680.

¶36. In *Pettit*, the trial court did not permit the jury access to a tape recording of an alleged drug transaction. The trial judge commented, "They can't listen to the tape any more than they already have. It does not go back into the jury room any more than a transcript of what other witnesses said." *Id.* at 680. As the *Walker* Court explained, the Court in *Pettit* looked to a variety of sources to determine whether the trial court was correct to exclude the tape recording from the jury room:

> Miss. Code Ann. § 99-17-37 (1972) states that "[a]ll papers read in evidence on the trial of any cause may be carried from the bar by the jury." More to the point, Miss. Unif. Crim. R. Cir. Prac. 5.14 states in part: The court shall permit the jury, upon retiring for deliberation, to take to the jury room a copy of the instructions and exhibits and writings which have been received in evidence, except depositions. [3]

*Walker*, 671 So.2d at 604 (quoting *Pettit*, 569 So. 2d at 680). The Court in *Pettit* held that the trial court

should have permitted the tape recording to go to the jury, noting that "considering the language of 5.14, the rule is, within reason mandatory." *Pettit*, 569 So. 2d at 680. The *Pettit* Court also considered the opinion of *Coulter v. State*, 506 So. 2d 282 (Miss. 1987), in which the defendant assigned as error his confession being taken into the jury room. This Court, citing Rule 5.14, quickly disposed of this claim, emphasizing the rule's mandate that the court shall permit the jury access to all exhibits and writings received into evidence, except depositions. *Walker*, 671 So. 2d at 604 (citing *Coulter*, 506 So. 2d at 268).

## CONCLUSION

¶37. This Court holds, as it did with similar arguments in *Walker*, *Pettit*, and *Coulter*, that Holloway's assignment of error is without merit. The judgment of the trial court is affirmed.

¶38. **COUNT I: CONVICTION OF FONDLING AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE (5) YEARS SUSPENDED AND THE APPELLANT PLACED UNDER POST-RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. We use anonymous first and last names for the minor prosecutrix and her family.

2. Mary told Dr. Chidester that at the time of the alleged incident, Holloway was wearing gray shorts. At trial Mary testified that Holloway was wearing brown shorts with an orange stripe.

3. Rule 5.04 was the identically worded predecessor of Rule 3.10.