IRVING, J.,
for the Court.
¶ 1. Ricky Deloney was found guilty by an Itawamba County jury of burglarizing the home of Valerie Thomas. Feeling aggrieved by his conviction, Deloney filed this appeal in which he asserts as his only issue that the trial court erred in failing to grant his motion for a JNOV or, in the alternative, a new trial.
¶ 2. Ascertaining no reversible error, we affirm.
FACTS
¶ 3. Valerie Thomas testified that, on the evening of August 1, 2001, she left her residence en route to the home of a friend, Jeff Wright, to use his telephone. She explained that when she arrived at Wright’s home, Ricky Deloney, Jamie Jones, Darnel Coats, and Jerron Cooper were present in Wright’s driveway. Thomas testified that when she left Jeffs house thirty to forty-five minutes later, Jones, Coats, and Cooper were gone. When she arrived at her home, her kitchen door was open and the kitchen light was on. Thomas affirmed that she had not left her residence in that condition before leaving for Jeffs house.
¶ 4. As she was leaving her car, to investigate what had occurred, Deloney pulled up in a car and called her by name. She told Deloney that she could not talk to him then because someone was in her house. About that time, she heard a loud crashing sound emanating from her home. She then rushed toward her house in an attempt to open her living room door. At that point, the kitchen light went out, and Jones, Coats, and Cooper rushed out through the kitchen door, ran across her yard, got in the car with Deloney who had been waiting for them, and drove off.
¶ 5. When she went into her house, she discovered that the burglars had taken a cellular telephone and a few baseball cards. They had placed her VCR and some movie videos in a bag, but they threw the bag down before fleeing the house. They had entered by kicking in the kitchen door.
¶ 6. Cooper, who was indicted along with Deloney, Jones and Coats, testified for the State pursuant to a plea arrangement. He testified that Deloney dropped Jones, Coats and him off at Thomas’s house and came back and picked them up. According to Cooper, when Deloney made the drop-off, Deloney knew that Cooper, Jones, and Coats were going to break into Thomas’s house. Cooper also affirmed a statement that he gave to his lawyer shortly before the trial. In that statement he corroborated Thomas’s statement that De-loney called her when he arrived at her house. Cooper testified that Deloney called Thomas to distract her attention *447 from her house while he, Jones and Coats went inside. He further testified that all of them left Thomas’s house in Deloney’s car and that Deloney was the get-away driver.
¶ 7. Deloney testified to quite a different version. He testified that he went to Wright’s house after leaving work on the evening of August 1, 2001. Coats, Cooper, Jones, Wright and Thomas were at the house when he arrived, but shortly thereafter, Jones left with his girlfriend. Delo-ney further testified that, while Thomas was using the telephone, Wright, Coats, and Cooper were plotting to break into Thomas’s house to steal some weapons. Deloney said that Wright, Coats, and Cooper asked him to participate, but he would not do so. He testified that he then left Wright’s house and went to Jones’s house to play a PlayStation, but Jones was not at home. He then drove to Thomas’s house. As he arrived there, he saw Thomas pulling in her driveway. Deloney said he called Thomas to tell her about Wright, Coats, and Cooper’s plot to break into her house. He testified that he then heard a loud boom come from Thomas’s house, and Thomas ran toward her house. He then observed three men, with their shirts over their heads, run from Thomas’s house and disappear into the woods. At that point, he left Thomas’s house and went home.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. Deloney argues that the circuit court erred by denying his motion for a JNOY or, in the alternative, for a new trial because the verdict was against the overwhelming weigh of the evidence. He explains there is no evidence that he intended to participate in the burglary of Thomas’s home. Deloney further asserts that the State failed to prove the elements of burglary beyond a reasonable doubt. The State counters that there was sufficient evidence supporting Deloney’s guilt and therefore concludes that the circuit did not err in denying Deloney’s motion.
¶ 9. The standard of review for a motion for judgment notwithstanding the verdict and a motion for a new trial both are soundly embedded in our case law. A motion for judgment notwithstanding the verdict implicates the sufficiency of the evidence. Sheffield v. State, 749 So.2d 123, 125(¶ 9) (Miss.1999). In reviewing the sufficiency of the evidence, we must:
with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Franklin v. State, 676 So.2d 287, 288 (Miss.1996).
A motion for a new trial, however, falls within a lower standard of review than does that for a judgment notwithstanding the verdict. A motion for a new trial simply challenges the weight of the evidence. [An appellate] [c]ourt ... will reverse the trial court’s denial of a motion for a new trial only if [the trial] ... court abused its discretion [by denying the motion]. We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, *448 would be to sanction an unconscionable injustice. (Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)).[F]aetual disputes are properly resolved by a jury and do not mandate a new trial.
Holloway v. State, 809 So.2d 598, 606(¶ 22) (Miss.2000).
¶ 10. In the case sub judice, Deloney was convicted of burglary pursuant to Mississippi Code Annotated section 97-17-23 (Rev.2000) which provides that:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there, shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.
¶ 11. While Deloney’s version of what happened differed from that given by Thomas and especially Cooper, it was up to the jury to resolve the conflicts and decide who was or was not telling the truth. It is the jury’s function — after hearing all the evidence, the applicable law, and instructions — to accept the testimony of some witnesses and reject that of others, as well as to accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980). In other words, the credibility of witnesses is not for the reviewing court. Id.
¶ 12. We will not repeat here the facts which are set forth in the earlier portion of this opinion. Suffice it to say that, based on those facts, we find that the evidence was more than sufficient to support Deloney’s conviction of burglary. We cannot say that fair-minded persons could only find Deloney not guilty as to one or more elements of the offense.
¶ 13. We also find no abuse of discretion in the trial court’s denial of Deloney’s motion for a new trial. Considering the evidence previously described in this opinion, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice. We therefore affirm.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF ITAWAMBA COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED AND FOUR YEARS OF POST-RELEASE SUPERVISION, PAYMENT OF $2,000 FINE, AND RESTITUTION IN THE AMOUNT OF $250, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ITAWAM-BA COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.