IRVING, J.,
for the Court.
¶ 1. Stanley E. Stewart, Jr. was convicted in the Circuit Court of Copiah County of three counts of automobile burglary and sentenced to three consecutive three-year terms in the custody of the Mississippi Department of Corrections. Aggrieved by the judgment below, Stewart has appealed and presents three issues: (1) whether the circuit court erred in not granting him funds to hire an expert witness in the forensic science of handwriting, (2) whether the circuit court erred when it overruled his motion to suppress concerning a statement he made which was taken by Investigator Milton Twiner, and (3) whether the circuit court erred in not granting his motions for directed verdict and new trial?
¶ 2. Ascertaining no error, we affirm.
FACTS
¶ 3. During the morning of June 14, 2002, an automobile burglary transpired at the residence of Jan Purvis. The Purvis residence is located on Extension Street, across from a library, in Hazlehurst, Mississippi. Purvis, the owner of the vehicle, reported that a cellular telephone was taken from the automobile.
¶ 4. During the early morning hours of June 26, 2002, a series of automobile burglaries occurred on Extension Street. A white Ford Escort owned by Donna Lewis was burglarized, but nothing was taken. A blue Ford Expedition owned by Robert and Renee Harrison was also burglarized and a cellular telephone charger, an umbrella, and a briefcase were removed from the automobile. Finally, a 2000 F250 pickup truck owned by Jim Uselton was burglarized. A cellular telephone was taken in-this burglary.
¶ 5. Meanwhile, the Hazlehurst Police Department was assisting with a federal investigation of a telephone fraud seam involving the illegal activation of stolen cellular telephones in the area. This investigation led the police to the appellaht, Charles E. Stewart, Jr., who was suspected of having possession of one of these stolen telephones but was not, at that time, a suspect in the telephone fraud investigation. On June 27, 2002, police officers went to Stewart’s place of employment to talk to him about their investigation. After talking to the police officers about a cellular telephone in his possession and being informed that the telephone was possibly stolen, Stewart relinquished to police possession of the telephone and a cellular telephone charger which was in his car and voluntarily accompanied the officers to the police station. ■
¶ 6. At the station, police officers had in custody a primary suspect in the federal investigation. This suspect implicated Stewart as being involved in the telephone scam. Thereafter, the police officers called Stewart into the room with the suspect. The officers then read Stewart his rights, and Stewart signed both a rights and waiver form. While in the presence of several officers, Stewart made statements claiming responsibility for the automobile burglaries that occurred on Extension Street in June of 2002, gave descriptions of those vehicles, and described what items he took from the automobiles. Officers *1092 then attempted to obtain a recorded statement from Stewart reflecting his earlier statements; however, Stewart declined to give a recorded statement.
¶ 7. Stewart was arrested, indicted, and tried on three counts of automobile burglary. A jury found him guilty of all three counts.
¶ 8. Other pertinent facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Motion for Forensic Expert

¶ 9. Stewart first contends that the trial court committed reversible error in denying his motion for funds to hire a handwriting expert. He explains that his indigence prevented him from hiring an expert and that, to ensure that he was not deprived of state and federal due process of law, the circuit court should have granted his request. Stewart cites Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) as authority for his position that experts of all kinds should be made available to indigent defendants when they are unable to afford such experts themselves.
¶ 10. We first review Ake as authority for Stewart’s position. In Ake, the defendant was charged with two counts of murder in the first degree and two counts of shooting with intent to kill. Id. at 72, 105 S.Ct. 1087. The defendant, an indigent, raised an insanity defense and later moved at the pretrial conference for the State to either arrange for a psychiatrist to perform an evaluation on him or to provide funds so he could hire a psychiatrist. Id. The circuit court denied his motion for a psychiatric evaluation at state expense and proceeded with his trial. Id. During trial, no evidence was presented as to what the defendant’s state of mind was at the time of the offense. The defendant was subsequently convicted on all counts. Id. After his conviction, the defendant filed an appeal, arguing that, when an indigent defendant’s sanity, at the time of the commission of the offense, is seriously in question, the constitution requires that he has access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition. Id. at 70, 105 S.Ct. 1087.
¶ 11. The court held that “when a defendant demonstrates to the trial judge that [the defendant’s] sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.” Id. at 83, 105 S.Ct. 1087.
 ¶ 12. Clearly Ake applies in situations where the sanity of the defendant is at issue. However, the Constitution does not require a state to furnish an indigent defendant with expert or investigative assistance upon demand. Weatherspoon v. State, 732 So.2d 158, 160(¶6) (Miss.1999) (citing Johnson v. State, 476 So.2d 1195, 1202 (Miss.1985)). Our supreme court has further analyzed an indigent defendant’s right to expenses to hire experts: “An indigent’s right to defense expenses is ‘conditioned upon a showing that such expenses are needed to prepare and present an adequate defense.’ Concrete reasons for requiring an expert must be provided by the accused.” Howell v. State, 860 So.2d 704, 721(¶ 42) (Miss.2003). “There is no single test for determining whether the services of an investigator or an expert are necessary; that decision will depend on the facts and circumstances of the particular case and must be committed to the sound discretion of the court to which the request for expenses is directed.” Weath *1093 erspoon, 732 So.2d at 160(¶ 7) (citing Johnson, 529 So.2d at 590 (Miss.1988)).
¶ 13. Stewart filed a motion for funds to hire experts and investigative assistance. In his motion, he contended that he was in need of an expert “to show that he did not sign a waiver of his rights prior to giving a statement.” The circuit judge heard Stewart’s motion during the pretrial hearing. The State brought forth Officers Les Tan-nehill, Ellis Stuart, and Milton Twiner, each of whom affirmed that they personally witnessed Stewart sign the waiver of rights form. Stewart testified that he did not sign the form. After hearing all of the evidence, the following exchange occurred:
The Court: The issue in this case is not whether or not Mr. Stewart signed the document. The issue is whether or not the Court should appoint a handwriting expert to examine documents. Now, is there a standard upon which the Court should base its determination?
The State: That would be the preponderance of the evidence, Your Honor.
The Court: I can’t hear you.
The State: That would be a preponderance of the evidence, Your Honor.
The Court: Preponderance of the evidence of what?
The State: Of the standard of whether there is substantial evidence to necessitate the need of a handwriting analysis.
The Court: I don’t see any — the Court doesn’t see any indication that this is anybody’s signature other than Mr. Stewart’s. If that’s what I’m supposed to decide here, I don’t see any indication whatsoever, no evidentiary basis for the Court to appoint an independent analyst, whatever you call it. So I’ll deny your motion, counsel.
¶ 14. Before we are authorized to overturn a trial court’s denial of a request for expert assistance at public expense, we must find an abuse of discretion so egregious as to deny due process rendering a trial fundamentally unfair. Fisher v. City of Eupora, 587 So.2d 878, 883 (Miss.1991). While it is true that Stewart denied signing the waiver of rights form, the overwhelming evidence was that he did. Under these circumstances, we cannot say that Stewart offered concrete reasons to justify the provision of expert consultation at public expense. Therefore, we find that the trial court’s denial of Stewart’s request for expert assistance was not an abuse of discretion resulting in a denial of due process. This issue is without merit.

2. Motion to Suppress

¶ 15. Stewart next argues that the circuit court erred when it overruled his motion to suppress the incriminating oral statements which he gave to Officer Milton Twiner. In his motion to suppress, he alleged that the statements he made to police officers were not voluntarily made. He subsequently renewed his motion to suppress at the pretrial hearing in which he asserted that the police violated his Miranda rights. He also alleged, as previously noted, that he did not sign the waiver of rights form. He explains that the statements being used against him were made after he had requested assistance of counsel. He alleges that he was questioned by Twiner after he had advised Twiner that he wanted a lawyer. The questioning, according to Stewart, violated his Sixth Amendment right to counsel.
¶ 16. The State presented the testimony of all of the law enforcement officers who were present when the statements were allegedly made. Each of whom testified that the statements had been freely and voluntarily given by Stewart after he *1094 had been advised of and waived his rights. The trial court found that Stewart “knowingly and voluntarily waived his constitutional rights, and knowingly and voluntarily proceeded with a statement” before changing his mind about giving a recorded version.
¶ 17. In Moody v. State, 841 So.2d 1067 (Miss.2003), our supreme court observed the well established standard for appellate review of a trial court’s decision overruling a motion to suppress:
Regarding the overruling of a motion to suppress by the circuit court, our scope of review is limited. “Once the trial judge has determined at a preliminary hearing, that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal. Such findings are treated as findings of fact made by a trial judge sitting without a jury as in any other context. As long as the trial judge applied the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence. Where, on conflicting evidence, the court makes such findings, this Court generally must affirm.”
Moody, 841 So.2d at 1086 (¶ 53)(citations omitted).
¶ 18. We find that the circuit court did not err in overruling Stewart’s motion to suppress. While Stewart flatly denied signing the waiver and rights forms, as previously observed, Officers Tannehill, Stuart, and Twiner affirmed that they witnessed Stewart sign both forms. Moreover, Officer Twiner testified that no promises or threats were made to Stewart in conjunction with Stewart’s signing of the forms. We, therefore, find no merit in Stewart’s arguments on this issue.

3. Sufficiency of the Evidence/New Trial

¶ 19. Stewart finally argues that the evidence was insufficient to support his guilty verdict. He also proclaims that the jury’s verdict was against the overwhelming weight of the evidence and that a new trial is warranted.
¶20. The standard of review for a motion for directed verdict and motion for a new trial both are soundly embedded in our case law. A directed verdict, judgment notwithstanding the verdict and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial. Shelton v. State, 853 So.2d 1171, 1186(¶48) (Miss.2003). The standard of review for the legal sufficiency of the evidence is well-settled:
[W]e must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Franklin v. State, 676 So.2d 287, 288 (Miss.1996) (quoting Wetz v. State, 503 So.2d 803, 808 (Miss.1987)). The appellate court properly reviews the ruling on sufficiency of the evidence on the last occasion the challenge was made in the trial court. Shelton, 853 So.2d at 1186(¶ 48).
*1095 ¶ 21. A motion for a new trial, however, simply challenges the weight of the evidence. Howell, 860 So.2d at 764 (¶ 212). “This Court will reverse a trial court’s denial of a motion for a new trial only when it amounts to an abuse of the court’s discretion. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.” Buskirk v. Elliott, 856 So.2d 255, 266(¶ 33) (Miss.2003) (citations omitted). Factual disputes are properly resolved by a jury and do not mandate a new trial. Holloway v. State, 809 So.2d 598, 606(¶22) (Miss.2000).
¶ 22. The evidence in this case is more than sufficient to support Stewart’s guilt of the crimes with which he was charged. Officers Tannehill, Stuart, and Twiner testified that they went to Stewart’s place of employment to question him concerning a cellular phone, which was possibly in his possession, that was connected to a telephone fraud investigation. The officers stated that Stewart acknowledged that he had a cellular phone in his possession, retrieved the telephone from his car, and gave it to them. They further explained that Stewart allowed them to search his car and that they found and retrieved a telephone charger adapter. According to the officers, Stewart voluntarily came to the police station where officers continued to question him concerning the federal investigation. They testified that Stewart eventually gave information on other crimes which the department was investigating. The officers explained that Stewart was given his Miranda warnings upon their receipt of this additional information.
¶ 23. Officers Stuart, William Chrisler,[1] and Twiner testified that Stewart gave incriminating statements in which he acknowledged that he burglarized several automobiles, gave descriptions of those vehicles, and described what items he took from the automobiles. According to the officers, Stewart stated that he obtained the telephone, which the officers retrieved from him, from a car at a residence across from the Hazlehurst library. He also stated to the officers that he obtained the telephone charger from a sports utility vehicle.
¶ 24. We next address Stewart’s argument that he should have been granted a new trial. We have examined the record and find no evidence that Stewart ever made a motion for a new trial. It is clear that he did not orally request a new trial after the jury verdict was delivered. The only mention in the record that a motion for new trial was ever filed is in the notice of appeal. The notice of appeal recites that a motion for new trial was filed on November 28, 2002; however, the general docket record does not reflect that the filing was ever made. The matter of evi-dentiary weight is waived by the failure to move for a new trial. Jackson v. State, 423 So.2d 129, 132 (Miss.1982). However, as our prior discussion of the evidence reveals, there is no merit to this issue. Allowing the verdict to stand will not, in our view of the evidence, sanction an unconscionable injustice.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF THREE COUNTS OF BURGLARY OF AN AUTO AND SENTENCE OF THREE YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER, IN THE *1096 CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
KING, C.J., BRIDGES, P.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.

. Chrisler was the assistant chief of police for the city of Hazlehurst. He was not present when Conerly was given his Miranda rights. However, he testified that he was present when Conerly gave the incriminating statements.