# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01739-COA

**BOBBY WADE BUTLER A/K/A BOBBYE WADE**         **APPELLANT**
**BUTLER A/K/A BOBBIE WADE BUTLER**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2018 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRIS S. NAILS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/30/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. Bobby Butler was indicted for two counts of sexual battery and two counts of fondling for crimes against his daughter. A jury convicted him of all counts, and he was sentenced to serve fifty-five years in the custody of the Mississippi Department of Corrections.

¶2. On appeal, Butler argues that the trial court erred in allowing testimony in violation of Mississippi Rules of Evidence 403 and 404. Additionally, he claims the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     R.B. is Bobby Butler's biological daughter.[1]  She was only twelve years old when Butler began sexually abusing her.

¶4.     At that time, she lived with her parents in Kossuth, Mississippi.  Butler would often stay home alone with R.B. while her mother worked night shifts at a grocery store.  Although the dynamic of her relationship with her father was initially a normal one, R.B. testified that the "close" relationship she and Butler once shared diminished once he began molesting her.

¶5.     The first incident began one night in 2012 when R.B.'s mother was at work.  That night, R.B. fell asleep on the couch facing inward to the back cushions.  She testified that when she woke up, she was surprised to find that Butler's finger was "in her vagina."  Although initially too shocked to say or do anything, R.B. shifted her body to indicate that she was awake.  She testified that she did not confront Butler or tell anyone else about the incident that night because she was "too scared."  Specifically, she was deterred by the fact that Butler had physically assaulted both her and her mother in the past.

¶6.     Varying incidents of sexual abuse would intensify until R.B. reached the age of fifteen.  On many occasions, when she and Butler were home alone, Butler would either insert his finger into R.B.'s vagina or attempt to guide her hand to touch his penis while she was asleep.  R.B. testified that Butler even cut holes into her pants to more easily access her vagina while she was sleeping.  From an adjoining laundry room, Butler habitually watched R.B. bathe by peering through holes he created in her bathroom wall.  He also planted a cell-

---

[1] We use initials to protect identities in this opinion.

2

phone in her bathroom to record her showering.  His behavior extended to sexually crude comments he made under his breath about R.B.'s body.  On a separate occasion when he, R.B., and R.B.'s mother shared a bed during a Memphis trip, Butler purposely rested his bare penis on the backs of R.B.'s legs.  At times, he would justify touching R.B. by claiming that he was just "checking" on her.

¶7.     R.B. often attempted to thwart her father's abuse by sleeping with multiple pillows and bed-sheets, stuffing the holes in the bathroom with tissue, and locking the door to her room.  But Butler would continuously foil her attempts by unplugging the holes in the bathroom and threatening to "take the hinges off the door."  R.B. eventually resorted to sleeping in blue jeans to make it "harder" for Butler to touch her vagina.

¶8.     At trial, two witnesses testified that Butler also touched them on separate occasions. One such witness was R.B.'s close friend at the time, K.M.  K.M. testified that she would often call Butler "dad" because of the close, father-daughter-like relationship they shared. She was fourteen years old when the incident took place.[2]

¶9.     K.M. testified that one night, when she visited R.B. at Butler's home, Butler suggested she sleep on the couch because the "back room" would get warm.[3]  When she did sleep on

---

[2] Butler was indicted for this other alleged incident by the time of his trial for crimes against his daughter.

[3] At this time, R.B.'s biological parents had divorced and were no longer living together.  Butler lived in a separate house in Winesoga with a girlfriend when the referenced incident took place.
        R.B. testified that even after her parent's divorce, she continued to visit her father because she was too afraid not to.

the couch, she woke up to Butler "rubbing her vagina and whispering things." As she pretended to sleep, Butler positioned his bare penis on the backs of her legs. When Butler circled the couch and attempted to move her hand from her chest, K.M. "woke up." Butler told her that he was just checking on her.

¶10. The night ended with K.M. leaving Butler's home earlier than anticipated after sending a text message to her sister. In that message, she detailed the incident and begged her sister to pick her up from Butler's house. The message was introduced into evidence.

¶11. The second relevant witness who testified that Butler touched her was M.I.[4] M.I. was twelve years old at the time of the incident and commented on the fact that Butler smoked cigarettes frequently. At one point, Butler resided with M.I. and her family. She testified that one night while she was asleep, she woke to Butler shining a bright cell phone light in her face and touching her vagina on the outside of her clothes. She confronted him and attempted to kick him before he fled to the living room. When she told her parents about the incident, Butler insisted that M.I. was only having a nightmare.

¶12. To further prove its case against Butler, the State presented R.B.'s punctured pants, copies of K.M.'s text-messages to her sister, and pictures of the holes in the bathroom wall into evidence. The State also presented several additional witnesses to testify on its behalf. Among them included Hope Meek, who owned the house that Butler rented and testified that

_____

[4] Butler was also indicted for this alleged incident by the time of his trial for crimes against R.B.

there were no holes in the wall prior to Butler moving in. She further testified that cigarette butts and ashes were sitting on a hot water heater in the laundry room next to the "main hole" from which a person in the adjoining bathroom could be seen clearly. Detective Heather Russell of the Corinth Police Department also testified. She specialized in crimes against children. Detective Russell's investigation of R.B.'s claims revealed that there were holes in the wall of Butler's Winesoga home, and she further examined R.B.'s pants and K.M.'s texts to her sister. Finally, Mary Liz-Deas, a family protection socialist for the Department of Human Services, substantiated R.B.'s claims and reported that R.B. was hardly able to maintain her composure while recounting the events of her father's sexual abuse during the interview.

¶13. At the close of trial, the jury ultimately found Butler guilty of all four counts of sexual battery and fondling. He now appeals, claiming that the trial court erred by allowing testimony from K.M. and M.I. in violation of Mississippi Rules of Evidence 403 and 404 and that the verdict was against the overwhelming weight of the evidence.

**STANDARD OF REVIEW**

¶14. We analyze the admissibility of trial testimony under an "abuse of discretion" standard. For "[a] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence, and "[u]nless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Corrothers v. State*, 148 So. 3d 278, 310 (¶76) (Miss. 2014).

5

¶15.    As to challenging the weight and sufficiency of the evidence, we also employ an

"abuse of discretion" standard to determine whether the trial court "erred in denying

[Butler's] motion for new trial." *Anderson v. State*, 271 So. 3d 520, 523 (¶14) (Miss. Ct.

App. 2018). "In determining whether a verdict is against the overwhelming weight of the

evidence, this Court must view all evidence in the light most consistent with the jury

verdict." *Id*. "Furthermore, we 'disturb the verdict only when it is so contrary to the

overwhelming weight of the evidence that to allow it to stand would sanction an

unconscionable injustice.'" *Id*. (quoting *Little v. State*, 233 So. 3d 288, 289 (¶ 1) (Miss.

2017)).

**ANALYSIS**

¶16.    Butler argues two main points on appeal: (1) the trial court should have excluded

testimony from K.M. and M.I. because their testimonies failed under Rules 403 and 404, and

(2) the verdict was against the overwhelming weight of the evidence.

> **I.      The lower court did not err by allowing evidence of Butler's other
> acts of sexual misconduct pursuant to Rule 404(b).**

¶17.    Butler argues that the lower court erred by allowing testimony from K.M. and M.I.,

who both alleged he sexually abused them on separate occasions.

¶18.    Before addressing this issue, our review of the record reveals that Butler failed to

object to the witnesses' testimony at trial. Our Courts ruled that failure to object to an issue

at trial results in waiver of the issue on appeal. *Harvard v. State*, 928 So. 2d 771, 791 (¶34)

(Miss. 2006). Because Butler failed to object to the testimony, he has effectively waived this

6

issue. Waiver notwithstanding, his arguments fail.

¶19. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." MRE 404(b)(1). To avoid potentially prejudicing a defendant at trial, the rule discourages the use of "character evidence" that either highlights the defendant's propensity to commit crimes or suggests that he committed the crime for which he is accused solely because he committed crimes in the past. Yet the rule allows an exception: "character evidence" is admissible if its purpose is to prove a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" at the time he committed the crime for which he stands trial. MRE 404(b)(2); *see Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008).

¶20. We will address each factor in turn.

### A. The testimony of K.M. and M.I. were admissible under Rule 404(b) to establish Butler's motive and common scheme or plan.

¶21. Butler argues that the State's purpose for using K.M. and M.I.'s testimony at trial failed to meet any of the purposes listed in MRE 404(b)(2).

¶22. Yet the Mississippi Supreme Court has rejected a similar argument under parallel circumstances in *Young v. State*, 106 So. 3d 775, 780 (¶18) (Miss. 2012). There, a jury found the defendant guilty of sexually abusing his under-aged daughter. *Id.* at 776 (¶1). On appeal, the defendant challenged the admissibility of testimony from a witness—another under-aged

7

family member—who claimed the defendant had sexually abused her twenty years prior to abusing the victim. *Id*. at 777 (¶10). The defendant argued that "the alleged incident was too remote in time and [was] too different from the events alleged by [his daughter] to have any non-character purpose." *Id*. The Court disagreed, finding the witness's testimony was admissible to show that the defendant had a motive to abuse his daughter and feed a "seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles." *Id*. at 780 (¶17).

¶23.   The *Young* Court also noted that the defendant carried out a "common plan, scheme, or system" that "involved [him] taking advantage of family relationships to engage in sexual activities with prepubescent girls" when he abused his daughter twenty years after abusing the previous family member. *Id*. The Court supported its findings by addressing prior rulings from similar cases. *Id*. at 778 (¶12); *see Green v. State*, 89 So. 3d 543, 551 (¶17) (Miss. 2012) (When addressing defendant's common scheme or plan to abuse the victim, the Court found that the testimony of the additional abused witnesses was admissible because there were profuse similarities between the circumstances surrounding the victim's abuse and other witnesses' abuse); *Gore v. State*, 37 So. 3d 1178, 1187 (¶20) (Miss. 2010) (Evidence of prior sexual misconduct is admissible under Rule 404(b) where "the defendant's means of accomplishing [sexual misconduct] on past occasions bear substantial resemblance to each other and with the present offense").

¶24.   More recently, our Supreme Court reached a similar conclusion in *Boggs v. State*, 118

So. 3d 515, 521 (¶17) (Miss. 2016). The *Boggs* Court noted a "striking resemblance" between the victim's allegations and testimonies from other witnesses. *Id*. It ultimately concluded that the testimonies were admissible to demonstrate the defendant's motive to satisfy his "impulse" and "uncontrollable desire" to sexually abuse young, developing girls like the victim. *Id*.

¶25. The Court went a step further and found that the defendant in *Boggs* carried out a "common plan or scheme" of abuse where the circumstances surrounding the victim's abuse and others who testified against him were substantially similar. *Id*. Specifically, the Court noted that the victims were around the same age when the defendant abused them and that he used his relationship with them to take advantage of their trust and "be alone with them." *Id*. In each case, the defendant told the victims not to tell anyone else about the incident. *Id*.

¶26. Pursuant to precedent, we find that the testimony of the other two girls was admissible under Rule 404(b). Their testimony fulfilled the non-character purposes of proving Butler's common scheme and motive to abuse his daughter. Based on their testimony, we find it was plausible for the jury to conclude that Butler's motive was to satisfy his "impulse" and "uncontrollable desire" to abuse young girls like his daughter. *Id*. Further, the testimony of the other two girls highlights Butler's motive to fulfill his craving to "partake in pedophillic sexual activities with young girls and developing juvenile females." *Young*, 106 So. 3d at 780 (¶17).

¶27. Likewise, we find that the testimony was sufficient under Rule 404(b) to show that

9

Butler executed a "common scheme or plan" when he abused R.B. because "[his] means of accomplishing [sexual abuse] on [subsequent] occasions bear substantial resemblance" to his means of abusing R.B.[5] *Gore*, 37 So. 3d at 1187 (¶20). As the State established, each incident of sexual abuse occurred within the confines of Butler's home. At each point, Butler waited until the victim and witnesses were asleep to touch them inappropriately. Butler would either touch the outsides of their vaginas or penetrate their vaginas with his finger. In some instances, he would place his bare penis on the backs of their legs. When the girls caught Butler, he would either pretend that he was only checking on the girls or would deflect in some other way. Each girl was either in her prepubescent years or "early teens" when the abuse took place. And Butler occupied a position of trust over each of the girls. The substantial similarities between these cases lead us to conclude that K.M. and M.I.'s testimonies were properly admitted by the trial court to establish that Butler began his "common scheme" to abuse young girls when he abused his daughter.

¶28. As a result, the trial court properly admitted the testimony of the other two victims to prove Butler's motive and common scheme or plan.

### B. The testimony of K.M. and M.I. was properly "filtered through" Rule 403.

---

[5] Butler argues the comment under Rule 404(b) suggests that exceptions only apply to *prior* bad acts. Therefore, he insists that the testimony of K.M. and M.I. cannot meet one of its exceptions because those incidents took place *after* Butler abused R.B., not before. Yet there is not such a limiter in the Rule.

While the Comment addresses prior acts with respect to Rule 404(b), it does not specifically *limit* the rule to prior acts. Neither does case law impose such a limitation.

10

¶29. Butler contends that, even if the testimony of K.M. and M.I. properly fulfilled a non-character purpose under Rule 404(b), Rule 403 effectively bars admissibility because it was more prejudicial than probative.

¶30. "[A] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. Despite being relevant, testimony could still be inadmissible if it was unfairly prejudicial to Butler's case.

¶31. Butler alludes that he was "unfairly prejudiced" in several ways. First, he argues that the trial court committed reversible error because it entered an agreed order to allow the testimony without a hearing. Butler claims that by doing so, the court forfeited its duty to balance the probative-versus-prejudicial nature of the other victims' testimony. Second, he claims that he was not afforded an opportunity to review all necessary discovery information pertaining to the charges involving K.M. and M.I. because he had not been arraigned on those charges. He adds that, as a result, his right to confront and fully cross examine both K.M. and M.I. was jeopardized. Finally, Butler makes a blanket statement that according to *Clemons v. State*, 460 So. 2d 835 (Miss. 1984), he was prejudiced by battling three different factual scenarios. He maintains that "[t]he only explicable reason for [using their testimonies] was to unfairly prejudice the jury by testimony to which counsel for the Appellant could not offer adequate cross examination," and force him to "defend three (3)

cases simultaneously."

¶32. We reject each of these arguments. First, the trial court did not commit reversible error when it entered the agreed order. The order was *agreed*. Having consented to it, Butler cannot now claim error. Second, contrary to Butler's argument, the order reflects that there actually was a hearing. Last, the order also states that Butler "confessed the motion."

¶33. Because Butler "confessed the motion," he agreed to the order and cannot now challenge the testimony. Absent the trial court's abuse of discretion, it would be unreasonable for this Court to reject the admissibility of evidence that Butler himself agreed to introduce at trial.

¶34. Even if Butler had not confessed the motion, we find that in the order the trial court indeed considered the probative-versus-prejudicial nature of the testimony at issue.[6] Therefore, we find that Butler was in no way prejudiced by the agreed order as he claims.

¶35. Neither was his right to confront and fully cross-examine the State's witnesses jeopardized by insufficient discovery. We first reiterate that issues not objected to at trial are waived on appeal. *Harvard*, 928 So. 2d at 791 (¶34). This issue includes claims of discovery

---

[6] One relevant part of the order, which balances the probative-versus-prejudicial nature of the testimony reads:

> That upon balancing the evidence under MRE 403, the prejudicial effect of admission of the Defendant's other sexual misconduct does not substantially outweigh its probative value. That the substantial similarities between the Defendant's other sexual misconduct are extremely probative of an indicator of a common scheme or plan, preparation, and motive.

violations. *Collins v. State*, 734 So. 2d 247, 250 (¶8) (Miss. Ct. App. 1999) (finding that "[u]nless [a discovery] objection is raised contemporaneously so as to allow the trial court to consider the issue and possible remedies, the issue is waived"). Our review of the record reveals that Butler failed to raise a discovery violation at trial. He has therefore waived this issue on appeal. Procedural bar aside, his claim is without merit.

¶36. As previously stated, Butler insists that discovery was insufficient because he was not arraigned on the charges involving K.M. and M.I. Whether Butler was arraigned on those charges is irrelevant. He was adequately put on notice as to all testimony and evidence that would be used against him at trial. Butler was provided with police statements detailing the witnesses' allegations, had access to the State's list of witnesses well before trial, and had access to a memorandum in support of the State's motion to allow admission of other bad acts which outlined very specific details regarding the witnesses' allegations.

¶37. In light of the foregoing, we find that Butler was provided with the necessary information required to effectively cross-examine both K.M. and M.I. In the documents listed previously, K.M. and M.I.'s allegations mirrored their testimonies at trial. Therefore, it is doubtful that their testimonies surprised or prejudiced Butler. As the State points out, Butler does not offer any examples of what additional information he needed that he lacked at trial. Butler had ample time to request any additional information he desired prior to trial.

¶38. Finally, Butler insists that K.M. and M.I.'s testimony was unnecessary because R.B. testified against him. He quotes *Clemons*, which states that "a conviction of rape may be

13

based on uncorroborated testimony of the victim where that testimony is not discredited or contradicted by other evidence." 460 So. 2d at 838. He uses this rule to suggest that because a rape conviction may be "based on uncorroborated testimony of the victim," additional testimony is not needed from other witnesses. *Id*.

¶39. Yet Butler misinterprets this rule. The rule has been historically used to rebut a defendant's "insufficient evidence" argument when a victim's independent testimony is not accompanied by physical evidence or outside testimony. *Otis v. State*, 418 So. 2d 65, 67 (Miss. 1982) (Although the victim's testimony was not supported by testimony from other witnesses, her independent testimony was sufficient, and the verdict was not against the overwhelming weight of the evidence because her testimony was absolute and satisfied the necessary elements of a rape case); *Dubose v. State*, 320 So. 2d 773, 774 (Miss. 1975) (Even where there were no other witnesses, the victim's independent testimony was sufficient to support a guilty verdict because the victim's testimony was not refuted by other evidence). It in no way bars or even discourages outside testimony. This rule simply provides assurance that a rape conviction can still be valid despite the absence of physical evidence or outside testimony.

¶40. We find that the trial court properly relied on its own "sound judgment" by allowing K.M. and M.I.'s testimony under Rule 403. We also echo the sentiments expressed in *Boggs*: "[t]he testimony of [M.I.] and [K.M.] was 'prejudicial' to [Butler] only to the extent that it established his plan and motive for abusing [R.B.]." *Boggs*, 188 So. 3d at 522 (¶19)

(emphasis added). Therefore, we find the testimony of the other two alleged victims was not more prejudicial than probative under Rule 403.

### C. The testimony was "accompanied by an appropriately-drafted limited or cautionary instruction to the jury."

¶41. The record clearly reflects that the trial court gave a proper limiting instruction to the jury. Specifically, the Court instructed the jury to only consider Butler's "other bad acts" for the purpose of determining his "motive, intent, preparation, or plan, if any." The Court further informed the jury that Butler's other bad acts "are not evidence suggesting that [he] is guilty of the crime charged in [that] case." Along with satisfying Mississippi Rules of Evidence 403 and 404, this instruction was sufficient to warrant admissibility of outside testimony.

¶42. Based on the detailed analysis above, we find that the trial did not abuse its discretion in allowing the testimony of the other alleged victims.

### II. The verdict was not against the overwhelming weight of the evidence.

¶43. Butler claims that the verdict in his case was contrary to the weight of the evidence because the State failed to successfully impeach him on cross-examination. Specifically, he contends that R.B. was the only witness to her abuse, that his "clear, unequivocal testimony" conflicted with the victim's testimony, and that his testimony should have been afforded just as much weight as the victim's testimony.

¶44. We note again that this issue is procedurally barred on appeal because Butler failed

15

to seek a new trial. *Stewart v. State*, 879 So. 2d 1089, 1095 (¶24) (Miss. Ct. App. 2004) (Holding that "[a] matter of evidentiary weight is waived by the failure to move for a new trial"). Notwithstanding the procedural bar, we hold that allowing the verdict to stand will not result in an "unconscionable injustice." *Id*. For "[o]nly in cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb [the verdict] on appeal." *Id*.

¶45. We will first address Butler's claim that he was not successfully impeached at trial because his testimony conflicted with R.B.'s testimony and should have been given as much weight as R.B.'s was given. It is obvious, common, and even expected that testimony will conflict at trial. After all, a defendant is often contesting, not agreeing with, the charges and allegations against him. When testimony at trial conflicts, it is up to the jury to determine how much weight it will afford to the testimony it hears. *Butler v. State*, 102 So. 3d 260, 268 (¶22) (2012). For "[t]he weight and credibility to be given to a witness's testimony 'are within the sole province of the jury as the fact finder.'" *Id.* "This Court will not re-weigh the credibility of witnesses." *Id*. The jury weighed the testimony of all witnesses and found Butler guilty of the offenses for which he was charged. This argument is without merit.

¶46. Butler also briefly alludes that the evidence at trial was insufficient to sustain a guilty verdict because R.B. was the only witness to her abuse. But our Supreme Court dismissed a similar argument in *Dubose*, holding that a victim's testimony alone is sufficient to uphold a guilty verdict "where [her] testimony is neither contradicted nor discredited by other

16

evidence or surrounding circumstances." 320 So. 2d at 725. In that case, the victim's testimony was not corroborated by testimony from other witnesses because she was sexually assaulted "in seclusion." *Id.* Here, R.B. was also abused "in seclusion." *Id*. As held in *Dubose*, we find that the fact that R.B. was the only witness to her abuse is immaterial. *Id*. Her testimony was corroborated by sufficient evidence to sustain Butler's conviction, as detailed below.

¶47. For example, the State presented evidence of the holes in R.B.'s pants through which Butler reserved access to touch her. It also presented pictures of the drilled holes in the bathroom wall that was connected to the laundry room, and offered copies of the phone messages K.M. sent to her sister when she complained that Butler touched her. On behalf of the State, Ms. Meeks testified that cigarette butts and ashes were left on a hot water heater next to the "main hole" in the bathroom, suggesting that Butler was near the hole on a frequent basis. That testimony was further corroborated by M.I.'s testimony that Butler smoked often. Ms. Meeks also testified that there were no holes in the bathroom wall prior to Butler moving in. Ms. Liz-Deas investigated R.B.'s claims and found that they were "substantiated" in light of all circumstances and evidence. Finally, K.M. and M.I. both established Butler's motive and common scheme to abuse R.B. by testifying that Butler had touched them inappropriately on separate occasions.

¶48. Butler attempted to rebut the testimony by presenting his girlfriend and mother on his behalf to testify that he "didn't do it" or "couldn't have done it." But as stated previously,

17

the jury weighed all of the testimony and reached a verdict that found Butler guilty of sexually abusing R.B. We decline to find that allowing the verdict to stand will result in an "unconscionable injustice." *Stewart*, 879 So. 2d at 1095 (¶24). Nothing in the record supports this notion. Even if Butler had properly moved for a new trial, we find that the trial court would not have abused its discretion if it denied the motion.

## CONCLUSION

¶49. We hold that the trial court did not err in admitting evidence of Butler's other bad acts, pursuant to Mississippi Rules of Evidence 403 and 404. Additionally, the verdict in this case was not against the overwhelming weight of the evidence. Therefore, we affirm.

¶50. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**