# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CT-00534-SCT

*KELVIN TAYLOR a/k/a KEVIN TAYLOR a/k/a
KT*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/2018 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| TRIAL COURT ATTORNEYS: | ROSHARWIN WILLIAMS |
| | WILLIAM GRESHAM |
| | DAVID L. TISDELL |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE M. McMILLIN |
| | GEORGE T. HOLMES |
| | KELVIN TAYLOR (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/06/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Kelvin Taylor filed a petition for certiorari asking this Court to review the Court of Appeals' decision to affirm his two convictions for murder and his conviction for felonious possession of a firearm. We granted the writ and, finding no reversible error, affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     After responding to a call on September 7, 2011, Officer Royneshia Turner found Willie Bass and Flora Watkins shot dead in their home in Clarksdale, Mississippi. *Taylor v. State*, No. 2018-KA-00534-COA, 2020 WL 2394027, at *1 (Miss. Ct. App. May 12, 2020). On November 9, 2012, after the case went cold for more than a year, Lieutenant Marena Jones and Captain Mario Magsby of the Coahoma County Sheriff's Department traveled to the Bolivar County jail to interview Kelvin Taylor, where he was in custody awaiting trial for an unrelated capital murder. *Id.* at *1, *1 n.1. After Lieutenant Jones and Captain Magsby informed Taylor of the reason for their visit—to investigate the murder of Charlina Miller—Taylor told Lieutenant Jones that he wanted to talk to Coahoma County Sheriff Charles Jones. *Id.* at *1. Later that evening, Lieutenant Jones and Sheriff Jones returned to interview Taylor, and, after informing Taylor of his Fifth Amendment rights per *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), Lieutenant Jones obtained a waiver of those rights from Taylor. Lieutenant Jones left the room to allow Sheriff Jones and Taylor to talk alone. *Taylor*, 2020 WL 2394027, at *1. The conversation on November 9, 2012, did not provide Sheriff Jones with any information regarding the murders of Bass and Watkins. *Id.* When Sheriff Jones and Lieutenant Jones returned to the Bolivar County jail for a second interview on November 15, 2012, Taylor indirectly

2

implicated himself in the murders. *Id.* at *2-3.[1]

¶3.   On May 27, 2015, Taylor was indicted for the murders of Bass and Watkins and for possession of a firearm by a felon. *Id.*  Taylor filed two motions to suppress—one authored by his defense counsel and one pro se. *Id.* at *2.  Taylor's pro se motion to suppress challenged the validity of the waiver of his Fifth Amendment right to counsel obtained by the Coahoma County Sheriff's Department because, according to Taylor, he had already invoked his Fifth Amendment right to counsel. *Id.* at *2, *3-4, *4 n.6.

¶4.   A week prior to Taylor's first trial, on July 11, 2016, the circuit court held a

---

[1] Specifically,

> A recorded portion of Taylor's second interview was played for the jury.  During that portion, Sheriff Jones speculated that Bass had been Killed because he had been selling drugs and that someone else in the area did not want the competition.  Taylor responded, "Nah, that wasn't it."  When Sheriff Jones asked Taylor to elaborate, Taylor said that Bass "was endangering people's lives" because he was a snitch.  Taylor later clarified that he had been "involved in something" and he had "mentioned certain things to [Bass] and only [Bass]."  He added that he "knew if [Bass] was a snitch that [Bass] would then tell the police.  And when the police came to [Taylor,] that's exactly what they came with."[]
>
> Sheriff Jones then asked Taylor why Watkins had been killed.  Taylor answered, "[S]he was a witness to the crime."  When Sheriff Jones speculated that Watkins had seen Taylor's face, Taylor denied that he was responsible for the victims' deaths.  However, he reiterated that Watkins died because she "was a witness to the crime."  On cross-examination, Lieutenant Jones conceded that Taylor did not confess that he killed Bass or Watkins.  After Lieutenant Jones testified, Sheriff Jones briefly testified about his interactions with Taylor.  The State rested its case-in-chief after Sheriff Jones's testimony.

*Id.* at *2-3 (alterations in original) (footnote omitted).

3

suppression hearing in which Sheriff Jones and Lieutenant Jones testified about their two interviews with Taylor. *Id.* at *2. Neither Taylor nor his defense counsel presented evidence to substantiate Taylor's claim that he invoked his right to counsel before November 9, 2012. *Id.* at *4, *4 n.7. The circuit court denied Taylor's motions to suppress. *Id.* at *2. Since the jurors were unable to reach a unanimous verdict at Taylor's first trial in 2016, the circuit court declared a mistrial. *Id.*

¶5.    Taylor's second trial began on February 14, 2018. *Id.* Though Taylor renewed his motions to suppress, he presented no evidence of the February 6, 2012 invocation of the Fifth Amendment right to counsel[2] before his case-in-chief—after the circuit court had ruled on Taylor's motions to suppress and his renewed motions to suppress, the State had rested and Taylor's motion for directed verdict had been denied. Taylor's statement implicating him in the Bass and Watkins murders was introduced at trial along with the testimony of Sheriff Jones and Lieutenant Jones regarding their interviews with Taylor. *Id.* at *3. After Taylor's statement was introduced at trial and the State rested, Taylor proffered the testimony of Bolivar County Sheriff's Department Chief Deputy Gerald Wesley, Jr., that Taylor invoked

---

[2] Specifically,

It was not until Taylor's second trial that Taylor finally proffered the testimony of Gerald Wesley[,] Jr., the chief deputy for the Bolivar County Sheriff's Department, who explained that Taylor invoked his right to counsel during a February 6, 2012 interview attempt. By then, the prosecution had already elicited testimony regarding Taylor's November 15, 2012 statement.

*Id.* at *4.

4

his Fifth Amendment right to counsel on February 6, 2012. *Id.* at \*4. The court allowed the proffer so that the testimony of Chief Deputy Wesley, Jr., would appear in the record. *Id.* But the court ruled that Chief Deputy Wesley, Jr., could not testify at trial since it already dealt with Taylor's argument necessitating the testimony of Chief Deputy Wesley, Jr., in the court's denial of Taylor's motions to suppress and found his testimony irrelevant to the merits of the case. Taylor was convicted on all three counts and was sentenced to life in prison for each murder count and ten years for possession of a firearm by a felon. *Id.* Taylor's motion for a new trial or, in the alternative, judgment notwithstanding the verdict, was denied on May 24, 2018.

¶6. In the Court of Appeals, Taylor argued, among other things, that the circuit court erred by denying his motions to suppress his statement made to Lieutenant Jones and Sheriff Jones and that he received ineffective assistance of counsel due to his defense counsel's failure to designate the recording from the November 9, 2012 interview as a necessary part of the appellate record. *Id.* at \*4, \*5-6. The Court of Appeals affirmed the judgment of the circuit court on May 12, 2020. *Id.* at \*10. Taylor filed a petition for certiorari, which we granted to address his argument that the Court of Appeals erred by affirming the circuit court's denial of his motions to suppress.

**STANDARD OF REVIEW**

¶7. "The standard of review for admission of evidence is abuse of discretion." *Jones v. State*, 303 So. 3d 734, 736-37 (Miss. 2020) (internal quotation marks omitted) (quoting

5

*Debrow v. State*, 972 So. 2d 550, 552 (Miss. 2007)). "When a trial court has overruled a motion to suppress the confession of a defendant, this Court will reverse the trial court's decision if the ruling was 'manifestly in error or contrary to the overwhelming weight of the evidence.'" *Benjamin v. State*, 116 So. 3d 115, 121 (Miss. 2013) (quoting *McGowan v. State*, 706 So. 2d 231, 235 (Miss. 1997)). Further, we "will reverse the admission of a confession if the trial court applied an incorrect legal standard." *Id.* (citing *Moore v. State*, 933 So. 2d 910, 918 (Miss. 2006)).

## ANALYSIS

¶8.     We granted certiorari to review the Mississippi Court of Appeals' decision as it relates to Taylor's arguments that the circuit court erred by denying his motions to suppress. Taylor claims the Coahoma County Sheriff's Office obtained an invalid waiver of his Fifth Amendment right to counsel. *See Jennings v. State*, 127 So. 3d 185, 190 (Miss. 2013) ("We may limit the issues we address upon a grant of certiorari." (citing *Jones v. State*, 95 So. 3d 641, 645 (Miss. 2012))); *see also* M.R.A.P. 17(h) ("The Supreme Court may limit the question on review."). Though we find no reversible error and therefore affirm the decision of the Court of Appeals, we further granted certiorari to correct a statement of the law surrounding waiver of the Fifth Amendment right to counsel contained in the Court of Appeals' opinion. We also briefly address a procedural bar to Taylor's argument that he received ineffective assistance of counsel at trial.

6

**I.      Suppression of the November 15, 2012 Statement**

¶9.     Taylor renews his argument on certiorari that the circuit court erred by denying his motions to suppress the November 15, 2012 statement.  In doing so, he argues that the circuit court applied an incorrect legal standard and misapplied the law.  Further, Taylor argues that the Court of Appeals erred by applying an incorrect legal standard.  On certiorari, Taylor also urges us to review the circuit court's rulings for plain error.

    *A.      Whether the circuit court applied an incorrect legal standard*

¶10.    In his pro se motion to suppress, Taylor argued that his statement given at the November 15, 2012 interview should be suppressed since he had previously invoked his Fifth Amendment right to counsel.  At the suppression hearing, Sheriff Jones and Lieutenant Jones testified about their interview with Taylor in which he implicated himself in the murders of Bass and Watkins.  At no point during the suppression hearing did Taylor or his counsel present evidence of Taylor's invocation of the Fifth Amendment right to counsel on February 6, 2012 during an interview with the Bolivar County Sheriff's Department.

¶11.    The circuit court heard testimony that Taylor waived his ***Miranda*** rights and, therefore, the circuit court admitted Taylor's statement indirectly implicating him in the Bass and Watkins murders.  In its order denying the motions to suppress, the circuit court provided that "'[t]his court is uncertain what [Taylor] means by claiming to have "invoked his right to counsel."  The court is unaware of any formal document invoking such right. [Taylor] offers nothing suggesting how he "invoked his right to counsel."'"  ***Taylor***, 2020 WL

7

2394027, at *4 n.7 (second and third alterations in original). The testimony of Chief Deputy Wesley, Jr., regarding Taylor's invocation of the right to counsel was not introduced until Taylor's second trial, at which point the circuit court had already heard and ruled on Taylor's motions to suppress and the renewed motions to suppress, Taylor's November 15, 2012 statement had already been played before the jury, the State had rested and the circuit court had denied Taylor's motion for directed verdict. The Court of Appeals noted Taylor's failure to present evidence of his invocation of the right to counsel and that "[c]learly, the circuit court could not have discussed evidence that Taylor did not present." *Id.* at *4. We agree.

¶12.   The Fifth Amendment to the United States Constitution, "which applies to the States by virtue of the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964), provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Maryland v. Shatzer*, 559 U.S. 98, 103, 130 S. Ct. 1213 175 L. Ed. 2d 1045 (2010) (alteration in original) (quoting U.S. Const. amend. V).   In *Miranda*, the United States Supreme Court "announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney." *Shatzer*, 559 U.S. at 103-04 (citing *Miranda*, 384 U.S. at 444).   And "if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 104 (citing *Miranda*, 384 U.S. at 474).   This right may be waived, and the validity of any such waiver rests on the State's ability to "show that the waiver was knowing, intelligent, and voluntary under the 'high standar[d] of proof for the waiver of constitutions

8

rights [set forth in] ***Johnson v. Zerbst***, 304 U.S. 458, 587 S. Ct. 1019, 82 L. Ed. 1461

(1938).'" ***Id.*** (alterations in original) (quoting ***Miranda***, 384 U.S. at 475).

¶13.     Here, the Court of Appeals' initial analysis of the admissibility of Taylor's statement

was correct:

> Taylor argues that the circuit court erred when it did not suppress the portion of his statement that was played for the jury. "An appellate court's standard of review of a trial court's admission or exclusion of evidence is abuse of discretion." ***Carothers v. State***, 152 So. 3d 277, 281 (¶ 14) (Miss. 2014). When determining if a confession was knowingly, intelligently, and voluntarily given, "[t]he trial court sits as the finder of fact." ***Davis v. State***, 133 So. 3d 359, 360 (¶ 6) (Miss. Ct. App. 2012). "We can reverse that determination only upon finding manifest error, that the trial court applied an incorrect legal standard, or that the determination is contrary to the overwhelming weight of the evidence." ***Id.***
>
> According to Taylor, his statement should have been suppressed because he invoked his right to counsel during a custodial interrogation on February 6, 2012. But Taylor did not present that information during the suppression hearing. Clearly, the circuit court could not have discussed evidence that Taylor did not present. It was not until Taylor's second trial that Taylor finally proffered the testimony of Gerald Wesley Jr., the chief deputy for the Bolivar County Sheriff's Department, who explained that Taylor invoked his right to counsel during a February 6, 2012 interview attempt. By then, the prosecution had already elicited testimony regarding Taylor's November 15, 2012 statement.

***Taylor***, 2020 WL 2394027, at *3-4.

¶14.     The Court of Appeals correctly declined to hold the circuit court in error for its failure

to suppress a statement based on evidence that was never presented to the circuit court before

ruling. In ***Jones v. State***, 461 So. 2d 686, 694 n.5 (Miss. 1984), we noted that "our scope of

review of fact findings made at a suppression hearing is limited. Where those findings are

supported by substantial credible evidence, we will not disturb them even though there be in

9

the record evidence to the contrary." Further, it is the trial judge that "sits as the trier of fact and must determine whether the incriminating statement was freely and voluntarily given." *Chim v. State*, 972 So. 2d 601, 603 (Miss. 2008) (quoting *Baldwin v. State*, 757 So. 2d 227, 234 (Miss. 2000)). And "[t]he [trial] judge should determine whether the criminal defendant was advised of his rights, including the right against self-incrimination as set forth in *Miranda* . . . ." *Id.* (third alteration in original) (internal quotation marks omitted) (quoting *Baldwin*, 757 So. 2d at 603).

¶15. Moreover, "[a]s long as the trial judge applies the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence." *Neal v. State*, 57 So. 3d 1271, 1277 (Miss. 2011) (internal quotation marks omitted) (quoting *Chamberlin v. State*, 989 So. 2d 320, 331-32 (Miss. 2008)). It is undisputed that, until Taylor's second trial, the circuit court did not have before it evidence of Taylor's prior invocation of his Fifth Amendment right to counsel during his February 6, 2012 interview while in custody in Bolivar County. *See Batiste v. State*, 121 So. 3d 808, 858 (Miss. 2013) (declining to apply evidence surrounding a *Miranda* warning on review of a denial of a motion to suppress when the same evidence was not presented until trial).

¶16. The circuit court found that the State had proved beyond a reasonable doubt that Taylor's November 15, 2012 statement was voluntary based upon the testimony of Sheriff Jones and Lieutenant Jones that Taylor received *Miranda* warnings and subsequently waived

his *Miranda* rights. The circuit court noted that after being given an opportunity to be heard, Taylor "offered no testimony or evidence contradicting the testimony of the officers" and "failed to go forward and present proof or evidence supporting his claim." As a result, the circuit court found that Taylor's statement was freely and voluntarily given and, therefore, admissible.

¶17. Given our standard of review, we cannot say that the circuit court committed manifest error or applied an incorrect legal standard, and we, like the Court of Appeals, decline to hold the circuit court in error for failing to discuss evidence not presented to it before its ruling. *See generally Moore v. State*, 287 So. 3d 905, 913 (Miss. 2013) (noting that we will not find manifest error when a court rules a statement is admissible when the State meets its burden to make a prima facie case that a statement is voluntarily, knowingly and intelligently given and when the defendant offers no evidence in rebuttal); *see also Holloway v. State*, 809 So. 2d 598, 603-04 (Miss. 2000) (recognizing that, when reviewing a denial of a motion to suppress, the operative time to present evidence that a statement is not voluntary is at the suppression hearing); *Batiste*, 121 So. 3d at 858. Again, "[w]hen the trial judge follows the correct legal standards to determine the admissibility of the contents of a confession, and there is substantial evidence to support the finding of voluntariness, this Court will not disturb the trial judge's findings." *Greenlee v. State*, 725 So. 2d 816, 826 (Miss. 1998) (citing *Alexander v. State*, 610 So. 2d 320, 326 (Miss. 1992)).

¶18. We find that the circuit court applied the correct legal standard applied based upon the

evidence presented, which did not include evidence of Taylor's February 6, 2012 invocation

of the right to counsel, to determine the voluntariness and admissibility of Taylor's

November 15, 2012 statement, as well as the validity of Taylor's **Miranda** waiver on

November 9, 2012.[3] We also find that there was substantial evidence, in the form of

undisputed testimony from Lieutenant Jones and Sheriff Jones, supporting the circuit court's

finding of voluntariness. As a result, the circuit court did not abuse its discretion, and we

---

[3] Taylor also attacks the circuit court's alternative holding that, assuming Taylor had presented evidence of the February 6, 2012 invocation of the right to counsel, the confession would still be voluntary under **Edwards v. Arizona**, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), and its progeny, including our decision in **Duplantis v. State**, 644 So. 2d 1235 (Miss. 1994). The circuit court went on to dismiss Taylor's argument in part because the invocation of the right to counsel would have been for the Bolivar County crimes, not the Coahoma County crimes Lieutenant and Sheriff Jones questioned him about. The court reasoned that the Sixth Amendment appointment of counsel is offense-specific and only applied to the Bolivar County crimes. While the circuit court's analysis and statement of the law with respect to its alternative, *hypothetical* analysis is incorrect for failing to distinguish the right to counsel under the Fifth and Sixth Amendments, the circuit court did not commit error since its hypothetical analysis was dependant upon a variable it already found did not exist—evidence establishing that Taylor invoked the right to counsel in February 2016. Since the court's hypothetical holding was not central to its decision to deny Taylor's motions to suppress, Taylor did not suffer any prejudice. Even so, we reiterate that the Fifth Amendment right to counsel, as opposed to the Sixth Amendment right to counsel, is not offense-specific. **Arizona v. Roberson**, 486 U.S. 675, 683, 687-88, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988). Additionally, we reiterate that the knowledge of a suspect's invocation of the right to counsel is imputed to other law-enforcement agents, and whether Lieutenant Jones and Sheriff Jones had actual knowledge of Taylor's invocation during his interview with Chief Deputy Wesley, Jr., is of no consequence. **Balfour v. State**, 598 So. 2d 731, 745-46 (Miss. 1992) (Recognizing that "all state actors are charged with knowledge of Balfour's previous request for counsel." (citing **Roberson**, 486 U.S. at 687)); *see **id.*** at 746 ("If the accused requests access to counsel, all officers of the prosecution force are bound thereby even those who have no actual knowledge of the request." (quoting **Kirkland v. State**, 559 So. 2d 1046, 1047 (Miss. 1990))).

will not disturb the circuit court's findings with respect to admissibility of the November 15, 2012 statement here.

## B.      *Whether the Court of Appeals applied an incorrect legal standard*

¶19.    Taylor argues that the Court of Appeals, in affirming the circuit court's order denying Taylor's motions to suppress, applied an incorrect legal standard regarding ***Edwards*** that conflicts with our precedent.  While we find the particular passage Taylor attacks to be *dicta*,[4] for clarity's sake we briefly address the correct standard that comports with our precedent.

¶20.    In ***Edwards***, 451 U.S. at 484, the United States Supreme Court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." Additionally, an

 accused, "having expressed his desire to deal with the police only through counsel, is not

---

[4] We have recognized that "[i]t is axiomatic that statements which are unnecessary to a court's ruling are *dicta*." ***C.W. v. Lamar County***, 250 So. 3d 1248, 1254 (Miss. 2018) (citing ***McKibben v. City of Jackson***, 193 So. 2d 741, 744 (Miss. 1967)).  Here, the Court of Appeals merely explored what it viewed as a possible outcome given a variable—evidence of Taylor's prior invocation of the right to counsel on February 6, 2012—that it already found to have not been presented at the suppression hearing. Therefore, while we do not view the Court of Appeals' misstatement of the law, discussed further in ¶21, *infra*, surrounding waiver of the Fifth Amendment right to counsel as holding any potential precedential effect, we correct the same out of an abundance of caution given the importance of the Fifth Amendment right to counsel.

13

subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. The rule in *Edwards* presuming involuntariness of subsequent waivers following invocation of the right to counsel

> ensures that police will not take advantage of the mounting coercive pressures of "prolonged police custody," [*Arizona v.*] *Roberson*, 486 U.S., at 686, 108 S. Ct. 2093, by repeatedly attempting to question a suspect who previously requested counsel until the suspect is "badgered into submission," *id.*, at 690, 108 S. Ct. 2093 (KENNEDY, J., dissenting).

*Shatzer*, 559 U.S. at 104. Moreover, "[f]or an *Edwards* initiation to occur, the suspect must show 'a willingness and a desire to talk generally about his case,' and such a willingness must not be influenced by law-enforcement officials." *Hutto v. State*, 227 So. 3d 963, 981 (Miss. 2017) (footnote omitted) (citation omitted) (quoting *Haynes v. State*, 934 So. 2d 983, 989 (Miss. 2006)).

¶21. While we do not reverse the Court of Appeals' decision today in light of our analysis above, we find it imperative to correct the Court of Appeals' misstatement, in *dicta*, of the law surrounding waiver of the right to counsel under the Fifth Amendment. In its opinion, the Court of Appeals correctly noted that Taylor failed to present evidence of his February 6, 2012 invocation of the Fifth Amendment right to counsel at the suppression hearing. *Taylor*, 2020 WL 2394027, at *4. The Court of Appeals also noted that, as discussed above, "the circuit court could not have discussed evidence that Taylor did not present." *Id.* Then, the Court of Appeals conducted the following hypothetical analysis:

14

Assuming for the sake of discussion that Taylor had presented timely proof that he invoked his right to counsel, it is well settled that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." ***Minnick v. Mississippi***, 498 U.S. 146, 153, 111 S. Ct. 486, 112 L. Ed. 2d 489 (1990). This is true regardless of "[w]hether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation . . . ." ***Arizona v. Roberson***, 486 U.S. 675, 687, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988).

Taylor argues that the circuit court did not apply the correct legal standard because it did not discuss whether he initiated communication with authorities. As discussed above, Taylor did not present proof that he had invoked his right to counsel during the suppression hearing, so there was no reason for the circuit court to discuss whether Taylor initiated the two November 2012 interviews. Even if that issue had been properly presented to the circuit court, there was evidence that when Lieutenant Jones first contacted Taylor on November 9, 2012, Taylor told her that he wanted to talk to Sheriff Jones, whom he had known for twenty to twenty-five years. "[W]hen an accused has expressed a desire to deal with the police only through counsel, further interrogation is absolutely barred . . . *unless the accused himself initiates further communication*." ***Balfour v. State***, So. 2d 731, 744 (Miss. 1992) (emphasis added) (citing ***Edwards v. Arizona***, 451 U.S. 477, 484, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981)). When Taylor said he wanted to talk to Sheriff Jones, he initiated the November 2012 interviews that followed. "A trial court's decision will be affirmed on appeal where the right result is reached, even though we may disagree with the reason for that result." ***Carothers***, 152 So. 3d at 282 (¶ 14). Because the circuit court reached the correct result when it allowed the prosecution to introduce a portion of Taylor's November 15, 2012 interview, we do not disturb that decision.

*Id.* at *4.

¶22. Though the Court of Appeals correctly notes the controlling law implicated when a suspect invokes their right to counsel in a custodial interrogation and the bar on further interrogation absent the suspect's own initiation of communication, the Court of Appeals' conclusion that Taylor's request to speak to Sheriff Jones *after* Lieutenant Jones and Captain

15

Magsby went to speak to Taylor amounted to an initiation of communication sufficient to satisfy *Edwards* is incorrect. Indeed, the United States Supreme Court in *Edwards* held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484.[5] But the Court of Appeals' analysis with regard to the requirement for initiation is incorrect and directly conflicts with our opinion in *Duplantis*.

¶23. Duplantis was a suspect for the Mississippi murder of Gary Thrash. *Duplantis*, 644 So. 2d at 1240. After Duplantis was arrested in Tennessee on unrelated charges, Mississippi authorities went to question him about Thrash's death. *Id.* Before the Mississippi authorities' arrival in Tennessee, Duplantis advised Tennessee authorities, while in custody in Tennessee for crimes committed in Tennessee, that he wanted a lawyer before speaking with Tennessee authorities. *Id.* at 1241-42. The Mississippi authorities were unaware,

---

[5] While no facts in the record suggest that Taylor experienced a break in custody for the purposes of *Miranda*, we do note that the *Edwards* rule has been narrowed. *See Shatzer*, 559 U.S. at 110-112 (holding that a break in *Miranda* custody for fourteen days is sufficient to end the presumption established in *Edwards*), *but see id.* at 107 n.2 (contrasting jail and prison for custody analyses); *Howes v. Fields*, 565 U.S. 499, 502, 511, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012) (distinguishing pretrial incarceration, on the one hand, and post-conviction or post-sentencing incarceration, on the other). Because the facts in the record do not support review of this issue, Taylor's claims are procedurally barred, and any arguments regarding the limitations to *Edwards* announced in *Shatzer* have not been properly preserved by either party, we decline to address the issue on this case on certiorari. Further, this Court has not yet had an opportunity to address the effect of *Shatzer* on our prior jurisprudence interpreting *Edwards*. We conclude that a case that is affirmed due to failure to preserve error is not the appropriate vehicle for such an analysis.

16

before their interview with Duplantis, that Duplantis previously had invoked his right to counsel. *Id.* Officer Knight, one of the Mississippi authorities, met with Duplantis, read him his rights and Duplantis signed a waiver of his rights. *Id.* Although Duplantis did not request counsel, "he refused to talk to Knight because he did not know him." *Id.* Rather, Duplantis wanted to speak with Officer Vick, with whom he was already acquainted. *Id.* Duplantis ultimately provided Officers Vick and Knight with a statement regarding the murder of Thrash. *Id.* at 1242.

¶24. We reversed the trial court's decision overruling Duplantis' motion to suppress, holding that the statement provided to the Mississippi officers was taken in violation of *Miranda* and *Edwards* since Duplantis did not reinitiate contact with the authorities and, as a result, the waiver of his Fifth Amendment right to counsel was invalid. *Id.* at 1243. Further, in *Duplantis*, we specifically addressed the effect of requesting to speak to a different law-enforcement official after rebuffing a request to speak to one law-enforcement official and rejected the argument that "Duplantis initiated the dialogue which resulted in the formal statement given" in which "Duplantis declined to answer Officer Knight's questions and asked to talk to Officer Vick instead." *Id.* There, "the request to talk to Vick was actually made in response to Knight's warning and questions." *Id.* "In other words, Knight initiated this encounter, then Duplantis re-directed it." *Id.* The State also argued that Duplantis initiated a later discussion in the bathroom with Officer Vick by attempting to create a deal to provide a statement in exchange for extradition. *Id.* But we held that "Vick

would not have been in the bathroom with Duplantis were it not for Knight's questioning of Duplantis in the first instance." *Id.* at 1244. Further, "[t]hat Duplantis responded to Knight's questioning by asking to talk to Vick instead, and by then attempting to negotiate a deal, does not indicate initiation of the encounter by Duplantis." *Id.*

¶25. Despite the time disparity of relevant custodial interrogations in *Duplantis* on the one hand and in this case on the other, the facts of *Duplantis* and those before us and the Court of Appeals in Taylor's case are nearly identical for the purposes of determining the initiation issue under *Edwards*.[6] Here, Taylor was being held on a separate charge in Bolivar County when he was approached by Captain Magsby and Lieutenant Jones of the Coahoma County Sheriff's Office. Taylor told Lieutenant Jones he would not speak to her but instead would speak to Sheriff Jones. Lieutenant Jones's and Captain Magsby's visit to interview Taylor was the operative event here—not Taylor's request to speak to Sheriff Jones. But for Lieutenant Jones's and Officer Magsby's visit to Taylor on November 9, 2012, he would not have requested to speak to Sheriff Jones. *Duplantis* makes clear that the dialogue between

_____

[6] With respect to Justice Maxwell's separate opinion, our decision today is not intended either to imply that the length of time between custodial interrogations is never relevant to an *Edwards* analysis or to hazard a guess as to how an analysis of Taylor's circumstances under *Edwards* and *Shatzer*, if undertaken, would turn out. Rather, we note only that for the sole purpose of determining whether a defendant initiates further contact with law enforcement, the facts of *Duplantis* and the present case are nearly identical since a defendant's simple redirection of a law enforcement-initiated interview outside the presence of counsel after the defendant has invoked the right to counsel is insufficient to eliminate the protections of *Edwards*. In other words, the facts before us in *Duplantis* were nearly identical to those here for the purposes of determining whether law enforcement or Taylor initiated the November 2012 interviews.

18

Taylor, Sheriff Jones and Lieutenant Jones was initiated not by Taylor's redirection of the interview but rather Lieutenant Jones's and Officer Magsby's visit to the Bolivar County jail.

### C.    Plain error

¶26.    While Taylor argues that plain-error review is appropriate here, we decline to review the record for plain error since the standard for plain error review is not met.  "A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."  MRE 103(f).  "This Court has repeatedly held that a trial judge will not be found in error on a matter not presented to the trial court for a decision."  *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 410 (Miss. 2018) (internal quotation marks omitted) (quoting *Purvis v. Barnes*, 791 So. 2d 199, 203 (Miss. 2001)).  Further, "[a] party is protected by the plain error rule when (1) he has failed to perfect his appeal and (2) when a substantial right is affected." *Id.* (quoting *State Highway Comm'n of Miss. v. Hyman*, 592 So. 2d 952, 957 (Miss. 1991)).  And "[t]he error also must be a deviation from a legal rule by the trial court that is plain, clear, obvious, and has prejudiced the outcome of the trial." *Id.* (citing *McGee v. State*, 953 So. 2d 211, 215 (Miss. 2007)).

¶27.    Although Taylor asserts a substantial right is affected, as discussed above, we have found that the circuit court did not err by denying Taylor's motions to suppress since it had no evidence before it rebutting the State's undisputed testimony that Taylor gave the November 15, 2012 statement voluntarily.  *See Byrom v. State*, 863 So. 2d 836, 872 (Miss. 2003) ("However, plain error will allow an appellate court to address an issue not raised at

19

trial *if the record shows that error did occur* and the substantive rights of the accused were violated." (citing **Grubb v. State**, 584 So. 2d 786, 789 (Miss. 1991))). Therefore, we do not find that the circuit court deviated from a legal rule such that it committed error that was plain, clear, obvious or that prejudiced the outcome of Taylor's trial. Thus, plain-error review is inappropriate here. Further, even assuming Taylor could demonstrate error in the admission of his November 15, 2012 statement, we are unconvinced that he would be able to show that the admission prejudiced the outcome of trial because we have no means of determining, short of speculation, what the State may have introduced in response to Taylor's argument if timely presented to the circuit court or that Taylor's motions to suppress would have succeeded.

## II.     Ineffective Assistance of Counsel

¶28.    In his petition for certiorari, Taylor asks this Court to reverse his convictions and to hold that he received ineffective assistance of counsel due to his trial counsel's failure to subpoena Chief Deputy Wesley, Jr., or to introduce as evidence the transcript of his interview with Chief Deputy Wesley, Jr., on February 6, 2012. In essence, Taylor argues that if his defense counsel had introduced the transcript of his February 6, 2012 interview at the suppression hearing, his November 15, 2012 statement to Lieutenant Jones and Sheriff Jones would have been suppressed and, therefore, he would not have been convicted. By the same token, Taylor argues that his defense counsel's performance was defective, that it prejudiced his defense and, as a result, that he was denied his right to effective assistance of counsel

20

under the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and its progeny. Since Taylor failed to raise his ineffective-assistance claim on these grounds on direct appeal to the Court of Appeals, we find this issue procedurally barred and decline to address this issue on the merits. *See Lovett v. Delta Reg'l Med. Ctr.*, 157 So. 3d 88, 89 (Miss. 2015) ("Lovett raises Issue III for the first time in her petition for *certiorari* review, thus the issue is waived and may not be considered by this Court." (citing *Moreno v. State*, 79 So. 3d 508, 509 (Miss. 2012))).

¶29.    The Court of Appeals addressed the only argument Taylor advanced on appeal that encompassed a claim for ineffective assistance of counsel. Specifically, Taylor only argued that "his trial counsel was ineffective because he did not designate the November 9, 2012 audio recording as a necessary part of the appellate record." *Taylor*, 2020 WL 2394027, at *6. Citing *Strickland*, 466 U.S. at 687, the Court of Appeals determined that Taylor was unable to demonstrate a defect in his counsel's failure to designate the November 9, 2012 audio recording as part of the record when the recording was not introduced at any stage of the proceedings against Taylor; his counsel could not "provide ineffective assistance by not designating something that is not part of the record." *Id.* at *6 (citing M.R.A.P. 10(a)). Taylor filed multiple briefs in the Court of Appeals. None of his briefs before the Court of Appeals identified the failure to subpoena Chief Deputy Wesley, Jr., or to introduce his testimony or a transcript of his interview with Taylor indicating that Taylor invoked his right to counsel on February 6, 2012, as deficient performance on the part of his trial counsel.

21

¶30. We have recognized that "[o]rdinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." ***Powell v. State***, 249 So. 3d 355, 361 (Miss. 2018) (internal quotation marks omitted) (quoting ***Archer v. State***, 986 So. 2d 951, 955 (Miss. 2008)). Even so, we may "address the merits of an ineffective-assistance-of-counsel claim on direct appeal 'if the record affirmatively shows ineffectiveness of constitutional dimensions.'" ***Id.*** (quoting ***Quinn v. State***, 191 So. 3d 1227, 1234 (Miss. 2016)); *see* ***Taylor v. State***, 167 So. 3d 1143, 1146 (Miss. 2015) ("we 'may nevertheless reach the merits of the ineffectiveness issue where . . . the record affirmatively shows ineffectiveness of constitutional dimensions . . . .'" (alterations in original) (quoting ***Read v. State***, 430 So. 2d 832, 841 (Miss. 1983))). Regardless, Taylor failed to raise this specific claim for ineffective assistance in any of his briefs before the Court of Appeals.

¶31. We have declined to address issues "not legitimately raise[d] before the Court of Appeals" as "inappropriate" and have therefore applied a procedural bar to such issues. ***Sumrell v. State***, 972 So. 2d 572, 575 (Miss. 2008); *see also* ***Williams v. Skelton***, 6 So. 3d 428, 430 (Miss. 2009) (quoting ***Alexander v. Daniel***, 904 So. 2d 172, 183 (Miss. 2005)); *see* ***Lovett***, 157 So. 3d at 89 (citing ***Moreno***, 79 So. 3d at 509). Since Taylor did not raise his ineffective-assistance argument on direct appeal before the Court of Appeals but, rather, in a petition for certiorari, he is barred from asserting this particular argument now. Though today we recognize and enforce the procedural bar to Taylor's ineffective-assistance claim raised in his petition for certiorari and therefore dismiss the same, we do so without prejudice

22

to allow Taylor to raise this claim, if he so chooses, in a post-conviction relief proceeding. *See generally **Powell***, 249 So. 3d at 361.

## CONCLUSION

¶32.    Since the circuit court did not commit reversible error by admitting the statements from Taylor's November 15, 2012 interview, we affirm the Court of Appeals' decision. We also affirm the circuit court's order denying Taylor's motions to suppress and its judgments of conviction as to Taylor.[7]    Further, since Taylor's ineffective-assistance-of-counsel argument on these particular grounds was not raised in his appeal to the Court of Appeals, we find that Taylor is barred from asserting it for the first time on certiorari.

¶33.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.  MAXWELL, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY BEAM AND ISHEE, JJ.**

**MAXWELL, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶34.    I agree we should not hold the trial judge in error for not suppressing Taylor's statement when the evidence Taylor now cites was not presented to the judge before his ruling.  Taylor clearly waived this issue by failing to timely offer Chief Deputy Wesley's testimony about Taylor's invocation of his right to counsel.

---

[7] Our decision to affirm the Court of Appeals is of course subject to those portions of our opinion today correcting the Court of Appeals' statements of the law that, although incorrect, we determined to merely constitute *dicta*.

¶35. I also have no problem with the majority taking issue with the Court of Appeals' alternate observation or dicta. The majority is correct that Taylor's response to the questioning officers—that he would not speak to them but would instead speak with Sheriff Jones—was not the type of post-invocation defendant-initiated communication contemplated in *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). But I do have concerns with the majority's heavy reliance on *Duplantis v. State*, 644 So. 2d 1235, 1244 (Miss. 1994), to support this notion. I respectfully disagree with the majority's assertion that, for purposes of an *Edwards* analysis, the facts before us are "nearly identical" to those in *Duplantis*. Maj. Op. ¶ 25.

¶36. In *Duplantis*, Mississippi law-enforcement officers interrogated the defendant a *mere three hours* after he was arrested, advised of his rights by Tennessee law enforcement, and requested counsel. *Id.* at 1240-41. Here, we face a much different scenario. Unlike *Duplantis*, Taylor was not questioned a few hours after invoking his right to counsel. Nor was he questioned a few days or weeks later. Rather, *nine months* had passed between Taylor's invoking his right to counsel when questioned after indictment on Bolivar County capital-murder charges and his later waiver of these rights when talking to law enforcement about the separate Coahoma County murders.

¶37. This is a significant distinguishing fact—a fact that based on more recent precedent could very well undermine the majority's reliance on *Duplantis* in correcting the Court of Appeals. In *Maryland v. Shatzer*, 559 U.S. 98, 115, 130 S. Ct. 1213, 175 L. Ed. 2d 1045

24

(2010)—a case handed down by the United States Supreme Court sixteen years after *Duplantis*—the Supreme Court clarified "that *Edwards* prophylaxis is not perpetual."[8] Instead, once there is a break in *Miranda* custody, *Edwards*'s protection against being readvised and waiving *Miranda* rights expires. *Shatzer*, 559 U.S. at 110-11. Further, *Shatzer* indicated a break in *Miranda* custody may occur even though the defendant is still incarcerated. *Id.* at 113-14. The relevant inquiry does not hinge on whether the defendant is inside or outside of prison. Rather, the question is whether, based on an examination of all circumstances, the defendant is still experiencing the coercive effects of his prior *Miranda* custody. *Id.*; *see United States v. Ellison*, 632 F.3d 727, 729-30 (1st Cir. 2010).

¶38.   In *Shatzer*, the Supreme Court held that a defendant's imprisonment due to a conviction for a separate crime did "not create the coercive pressures identified in *Miranda*." *Shatzer*, 559 U.S. at 1224. But "*Shatzer* left open the question whether those pressures are necessarily brought to bear on someone who is incarcerated before trial and then interviewed about a crime distinct from the pending charges." *Ellison*, 632 F.3d at 730 (holding that a defendant's pretrial detention for a separate crime, given the "relatively low atmospheric pressure in these circumstances," was not *Miranda* custody); *see also People v. Armstrong*, No. 4-11-0172, 2012 WL 7010037 (Ill. App. Ct. Aug. 7, 2012) (rejecting defendant's contention that pretrial custody *always* constitutes *Miranda* custody).

---

[8] *See Shatzer*, 559 U.S. at 110 (holding that a break in *Miranda* custody for fourteen days is sufficient to end the presumption established in *Edwards*).

¶39. So, had Taylor presented evidence at the suppression hearing of his invoking his right to counsel in February 2012, the question before this Court would likely have been whether the coercive pressures that *Miranda* and *Edwards* protect against were still present nine months later in November 2012, while Taylor was awaiting trial in jail for his Bolivar County capital-murder charges. This is an interesting question—one that could not be resolved, as the majority basically does here, by applying *Duplantis*.

¶40. But this is a question we need not answer today, since the trial judge was not presented evidence of Taylor's February 2012 invocation and thus cannot be held in error for denying Taylor's motion to suppress. For these reasons, I concur in part and in result.

**BEAM AND ISHEE, JJ., JOIN THIS OPINION IN PART.**